FINANCE COMMISSION OF BOSTON vs. ANTHONY L. BASILE.

Suffolk.   March 6, 1968. — April 22, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Boston Finance Commission. Investigating Body. Equity Jurisdiction,*
To compel giving evidence before Boston Finance Commission.

The statement in St. 1909, c. 486, § 21, that the Boston Finance Commis-
sion established under that chapter should have "all the powers and
duties enumerated" in St. 1908, c. 562, § 1 of which conferred specified
powers on the commission's predecessor, not only revived for the
commission its predecessor's power under § 2 of c. 562 to issue subpoenas
but also its power under § 3 thereof to seek judicial enforcement of its
subpoenas. [191]
Under an investigation voted by the Boston Finance Commission of
various matters relating to appropriations, expenditures, accounts, and
methods of administration of the office of Sheriff of Suffolk County,
including the service of process, an inquiry into the fees and expenses
charged by deputy sheriffs for the service of process was reasonably
related to the finances and methods of administration of Boston and
Suffolk County and was within the scope of the commission's powers
and duties under St. 1909, c. 486, § 18, and a reasonably limited
subpoena issued by it directing one having the authority and perform-
ing the duties of a deputy sheriff to appear before it with certain records
pertaining to its investigation and to testify was properly ordered
obeyed by the final decree in a proceeding in the Superior Court
brought by the commission. [192]

PETITION filed in the Superior Court on July 12, 1967.

The case was heard by *Hennessey,* J.

*Lawrence F. O'Donnell (John B. Greene* with him) for the
respondent.

*Gael Mahony (Elliot M. Surkin* with him) for the peti-
tioner.

WILKINS, C.J.   The respondent is the special sheriff of
Suffolk County by appointment pursuant to G. L. c. 37, § 4,
and has the authority and performs the duties of a deputy
sheriff.   A primary duty of a deputy sheriff is the service of

process and he has traditionally been reimbursed from the fees charged for making such service. See G. L. c. 262, §§ 8, 9, 11, 14, 15, 16, 17. By G. L. c. 262, § 8A, inserted by St. 1964, c. 594, § 2 (as amended through St. 1966, c. 116), deputy sheriffs are required annually on or before April 15 to file with the county treasurer an account of all fees and monies received under c. 262, § 8. On April 14, 1967, the eight deputy sheriffs of Suffolk County,[1] including the respondent, filed an account showing the gross amount of fees and expenses for the year ending December 31, 1966, as $262,317.82.

The petitioner finance commission determined that the methods by which the deputy sheriffs conducted their office appeared to the commission to require investigation. See St. 1909, c. 486, § 18, hereinafter quoted. Accordingly, they voted to hold an investigation of various matters relating to appropriations, expenditures, accounts, and methods of administration of the office of Sheriff of Suffolk County, including the service of process. The respondent was served with a subpoena directing him to appear before the commission with certain records pertinent to the investigation. The respondent appeared before the commission with counsel. He answered some general questions, but produced no records, and refused to answer questions concerning the amount of expenses incurred by the deputy sheriffs in the service of process; the distribution among the deputy sheriffs of the net proceeds from the service of process; the net amount received therefrom by the respondent; whether records are maintained of sheriffs' sales; in what geographical area the respondent is responsible for the service of process; who assigns process to the various deputy sheriffs; and by what standards the assignments are made.

On a petition to enforce the subpoena the trial judge made the following findings. The deputy sheriffs occupy, without charge, quarters in the Suffolk County Court House. They do not pay for heat, light or custodial and other services.

---

[1] Of the eight, two were described in the account as part time.

Seventy per cent of the cost of maintaining and operating the court house is borne by the city of Boston. St. 1935, c. 474, § 6[1].

Other conclusions of the trial judge are these. The respondent and the deputy sheriffs perform a public function as the officers charged with serving process,[2] and the methods by which they administer their offices have to do with methods of administration affecting the county of Suffolk. The commission's investigation has a reasonable relation to finances and methods of management of the city and county, and the investigation is within the commission's statutory scope of inquiry. The subpoena does not exceed reasonable limits.

A final decree ordered the respondent to produce the records and to give testimony. The respondent appealed.

At the arguments before us the respondent conceded that this court in its own right is entitled to receive all pertinent information as to the subject matter of the pending case. See G. L. c. 211, § 3 (as amended through St. 1956, c. 707, § 1). The correctness of the concession is elementary. We intend to ask for this information but our undoubted power to obtain it is no reason for not deciding the pending case.

The powers of the commission are in two statutes. By St. 1909, c. 486, § 18, "It shall be the duty of the finance commission from time to time to investigate any and all matters relating to appropriations, loans, expenditures, accounts, and methods of administration affecting the city of Boston or the county of Suffolk, or any department thereof, that may appear to the commission to require investigation, and to report thereon from time to time to the mayor, the city council, the governor, or the general court. . . ." By § 21, "the commission shall have all the powers and duties enumerated" in St. 1908, c. 562,[3] § 1 of which provides: "The commission . . . appointed . . . to examine into all matters pertaining to the finances of the . . . city, includ-

---

[1] Thirty per cent is paid by the Commonwealth. St. 1935, c. 474, § 6.

[2] G. L. c. 37, §§ 3, 11, 12.

[3] Notwithstanding § 8 of the latter statute, which stated that "The powers granted by this act shall cease" on December 31, 1908.

ing appropriations, debt, loans, taxation, expenditures, book-keeping, [and] administration . . . is hereby given authority to prosecute the said investigation, to inquire into the management of the business of said city, and to inform itself as to the manner and methods in which the same is or has been conducted. . . ." By § 2 "the commission shall have power to require the attendance and testimony of witnesses and the production of all books, papers, contracts and documents relating to any matter within the scope of the said investigation, or which may be material in the performance of the duties imposed by said orders and this act." Section 3 sets up a procedure whereby any person not complying with a summons or refusing "to answer any question, or to produce any book, contract, document or paper pertinent to the matter of inquiry in consideration before the commission" may be subject to orders of the Supreme Judicial or Superior court.

We do not accept the contention of the respondent that the powers last quoted were not revived by the statement in St. 1909, c. 486, § 21, giving the commission "all the powers and duties enumerated" in St. 1908, c. 562. No exception is stated, and there is no sound ground to omit the powers enumerated in § 3. The power to subpoena stands on the same footing as the enforcing power. Both must be read together to carry out the legislative intent. See *Gardner* v. *Massachusetts Turnpike Authy*. 347 Mass. 552, 556. To revive the commission's subpoena power but to preclude it from seeking enforcement through the courts would place the commission under a serious handicap in performing its duties, not the least of which is making important periodic reports which could lead to corrective legislation. The respondent's contention is contrary to our decision in *Finance Commn. of Boston* v. *McGrath*, 343 Mass. 754. Resort to the courts of justice must not be suppressed at the whim of interested public officers whose individual charges are unknown to the public and presently in controversy.

In an effort to reduce the commission to a role of futility, the respondent contends that the commission cannot con-

duct an investigation of the affairs of the sheriff. The respondent cites, without argument, G. L. c. 211, § 4, which confers upon the Supreme Judicial Court the power of removal of a sheriff. This has no present bearing. Later he quotes G. L. c. 211, § 3A (inserted by St. 1956, c. 707, § 2) which requires that the secretary to the Justices of that court be provided with suitable quarters in the court house. In apparent jest, the commission is apostrophised by the respondent whether because of this it would be its opinion that it could reach by subpoena into the courts and to those public officers enumerated in St. 1935, c. 474, § 2, given quarters in the court house, on the ground that they should be charged therefor.

In accordance with the trial judge's conclusions, and contrary to the contention of the respondent, we are of opinion that the fees and expenses charged by the deputy sheriffs do have a reasonable relation to the finances and methods of administration of the city and of the county. The fees for service of process might otherwise be made payable into the city treasury and any excess over the reasonable cost of such service might properly enure to its benefit, particularly if the discovery of the deputy sheriffs' net income should lead to the conclusion that their compensation exceeded the legislative intent underlying G. L. c. 262, § 8. The statutory powers of the commission must be given reasonable construction. As was said in *Finance Commn. of Boston* v. *Sheriff of Suffolk County,* 349 Mass. 503, 504, the commission's "range of inquiry is broad," although the holding was that it is not so broad as to authorize investigation of escapes from jail. In *Finance Commn. of Boston* v. *McGrath,* 343 Mass. 754, 760, it was said: "Section 18 . . . gives the commission authority 'to investigate *any and all matters* relating to appropriations . . . accounts, and methods of administration *affecting* . . . Boston or the county of Suffolk, or any department thereof.' . . . Section 18 amply empowers the commission (as a continuing independent body charged with watching city [and county] operations constantly and reporting what it observes to 'the mayor, the

city council, the governor or the general court,' as may be appropriate) to investigate at least those matters which, in its opinion entertained reasonably, have substantial relevance to the proper management of the city's affairs and the appropriate conduct of city employees in relation to matters in which the city has an interest." The statement at p. 761, that "The commission's range of inquiry is not unlimited," did not mean that the act should be given a hostile interpretation which would unduly restrict the commission in its duties, a view which the actual decision in that case amply demonstrates.

This is the opinion of a majority of the court.

*Decree affirmed.*