FINANCE COMMISSION OF BOSTON vs. COMMISSIONER OF
REVENUE & others.[1]

Suffolk. November 3, 1980. — March 3, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Public Record. Boston Finance Commission. Taxation*, Urban rede-
velopment corporation.

Statute 1975, c. 827, § 7, rendered excise returns and documents of re-
development corporations filed pursuant to G. L. c. 121A disclosable
as public records under c. 66, § 10 (*a*), but only as to such returns and
documents filed after the effective date of St. 1975, c. 827, § 7. [66-69]
The prohibition against disclosure contained in G. L. c. 62C, § 21 (*a*),
applied to records filed with a city's assessing office pursuant to
c. 121A and to such records filed with a city's redevelopment authority
to the extent they duplicated the contents of documents filed with the
Commissioner of Revenue. [69-70]
An investigation by the Finance Commission of Boston into the admini-
stration of redevelopment programs under G. L. c. 121A was not a
proceeding "to determine a tax" for purposes of an exemption from the
confidentiality requirement of c. 62C, § 21 (*a*). [70-71]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 8, 1979.

The case was heard by *Sullivan, J.*

The Supreme Judicial Court granted a request for direct
appellate review.

*Michael W. Merrill* for the plaintiff.

*Mitchell J. Sikora, Jr.*, Assistant Attorney General, for
Commissioner of Revenue.

---

[1] The commissioner of the assessing department of the city of Boston;
the director, Boston Redevelopment Authority; The Prudential Insurance
Company of America, intervener-defendant.

*Douglas G. Moxham (Jeffrey B. Rudman* with him) for
The Prudential Insurance Company of America, intervener.

*Marcia Drake Seeler,* Assistant Corporation Counsel, for
Commissioner of the Assessing Department of the city of
Boston, submitted a brief.

LIACOS, J.   The Finance Commission of Boston (commis-
sion) appeals from the judgment of the Superior Court, en-
tered January 29, 1980, in so far as it denied the commis-
sion's motion to compel production of documents predating
March 22, 1976.   We granted the commission's application
for direct appellate review.

The facts found by the motion judge are these.   On
February 21, 1977, the commission voted to investigate the
administration of redevelopment programs under G. L.
c. 121A by the Boston Redevelopment Authority (BRA) and
the city of Boston.   A subpoena was issued on March 1,
1979, to the Department of Revenue (department) to pro-
duce form 121A, Urban Redevelopment Excise Returns,
and all attachments as submitted by six named corpora-
tions[2] for the calendar years 1973 through 1978.   On the
same day the commission subpoenaed the commissioner of
the assessing department of the city of Boston (assessor) and
the BRA for "[a]ll financial records and statements" sub-
mitted by the six companies yearly for the same years pur-
suant to G. L. c. 121A.

In response to the subpoenas the department submitted
one excise return for the year 1977 but declined to produce
the other requested documents.   The assessor and the BRA
produced no subpoenaed items.[3]   The commission com-
menced this action, and The Prudential Insurance Company
of America (Prudential) was allowed to intervene as the

---

[2] Besides Prudential Insurance Company, the commission's complaint
sought pertinent financial records of:   Northern Assurance Company of
America, Charlestown Savings Bank, Al-Jordan Realty Corporation,
One-Seventy-Five Federal Street Associates, and Summer Street Realty
Corporation (Stone and Webster Corporation).

[3] The record shows no response from the BRA in the proceeding below
or on appeal.

representative of the companies. The commission filed a motion to compel production of documents and for judgment.[4]

The judge concluded that c. 121A projects are properly subject to the commission's investigatory authority under St. 1909, c. 486, § 18, but that the law in effect before March 22, 1976, barred disclosure of "tax returns" by the subpoenaed agencies. On the basis of the parties' memoranda and the commission's uncontroverted, verified complaint, the judge ordered that discovery was limited to documents pertaining to c. 121A projects, the applications for which were filed on or after March 22, 1976.[5] We agree.

The commission argues that it is entitled to discovery of c. 121A excise returns and records for all the years in question on two premises: first, that the documents are public records in which c. 121A corporations have a diminished privacy interest; second, that it has the statutory power and duty to reach the documents. The responding agencies maintain that the proscription against disclosure found in G. L. c. 62C, § 21 (a),[6] preempts the commission's public record claim and forecloses the need for balancing the privacy-publicity interests. We agree, in so far as the subpoenas encompass excise returns and their attachments.

---

[4] The judge treated the commission's motion as one for summary judgment based on an uncontradicted, verified complaint. Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974).

[5] The judge's order specified that documents pertaining to One Beacon Street and Prudential Center are excluded from discovery. We need not reach the commission's challenge to the factual basis for this ruling. In so far as the named documents fall within the statutory time frame decisive here, they are included in the over-all judgment.

[6] General Laws c. 62C, § 21 (a), inserted by St. 1976, c. 415, § 22, provides: "(a) The disclosure by the commissioner, or by any deputy, assistant, clerk or assessor, or other employee of the commonwealth or of any city or town therein, to any person but the taxpayer or his representative, of any information contained in or set forth by any return or document filed with the commissioner, other than the name and address of the person filing it, except in proceedings to determine or collect the tax or for the purpose of criminal prosecution under this chapter, is prohibited."

### 1. *The Public Record Claim.*

In 1975 the Legislature designated c. 121A information as public records. Statute 1975, c. 827, § 7, replaced former § 10 of G. L. c. 121A and added the proviso that: "All such information, as submitted to the tax commission, the department of corporations and taxation, and the appellate tax board by such corporation and the assessors of every such city or town, shall be filed with the housing board and in the office of the assessor of the city or town in which the project is located, and, upon request, shall be made available by said department of corporations and taxation and by the housing board to any person in accordance with the twenty-sixth clause of section four of chapter seven" (error in official print). The judge concluded that the above enactment rendered c. 121A records disclosable under G. L. c. 66, § 10, but only as to c. 121A applications submitted for approval after the effective date of the 1975 amendment.[7] The commission takes issue with the judge's prospective reading of the 1975 amendment and contends that G. L. c. 66, § 10, mandates disclosure of all records filed in the years 1973 through 1978 because the documents it seeks were at all times, after 1973, public records within the intendment of G. L. c. 4, § 7, as appearing in St. 1973, c. 1050, § 6.[8]

---

[7] General Laws c. 66, § 10 (*a*), as appearing in St. 1978, c. 294, provides: "(*a*) Every person having custody of any public record, as defined in clause Twenty-sixth of section seven of chapter four, shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof upon payment of a reasonable fee. Every person for whom a search of public records is made shall, at the direction of the person having custody of such records, pay the actual expense of such search."

[8] Statute 1973, c. 1050, § 6, provides: "The provisions of clause Twenty-sixth of section seven of chapter four of the General Laws, as amended by section one of this act, shall not be construed to exempt any record which was a public record on the effective date of this act from said clause Twenty-sixth."

Section 1 of that enactment inserted G. L. c. 4, § 7, Twenty-sixth, which provides in relevant part: "'Public records' shall mean all books,

The commission's reliance on our analysis of the public records statutes in *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn*, 374 Mass. 812 (1978), is misplaced in this instance. In *Hastings* we determined that the expansive definition of public records implemented by St. 1973, c. 1050, § 6, set out at note 8, *supra*, required disclosure unless one of nine statutory exemptions applied. 374 Mass. at 817. The commission here seeks tax records which are "specifically or by necessary implication exempted from disclosure by statute." G. L. c. 4, § 7, Twenty-sixth (*a*). General Laws c. 62C, § 21 (*a*), explicitly provides for the confidentiality of tax returns. The records sought in this case thus fall squarely within exemption (*a*), G. L. c. 4, § 7, Twenty-sixth, rather than exemption (*c*),[9] the privacy exclusion addressed in *Hastings*. Cf. *Attorney Gen.* v. *Collector of Lynn*, 377 Mass. 151, 153-156 (1979).

Even conceding the public purpose of the c. 121A corporation and that such a corporation has a lesser privacy interest, as the commission claims, the question of the corporation's rights to confidentiality is not before us.[10] The subpoenas at

---

papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose, unless such materials or data fall within the following exemptions in that they are:

"(*a*) specifically or by necessary implication exempted from disclosure by statute:

"  . . . .

"(*c*) personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an invasion of personal privacy . . . ."

[9] Of nine specified exemptions to the public records definitions, excerpted at note 8, *supra*, exemption (*c*) now provides: "(*c*) personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy . . . ." G. L. c. 4, § 7, Twenty-sixth (*c*), as amended through St. 1977, c. 691, § 1.

[10] We therefore do not address Prudential's argument that the commission lacks authority to investigate private companies.

issue were directed, not to the six companies, but to public officials whose handling of tax records is the object of G. L. c. 62C, § 21 (*a*). Only by reading a retroactive effect into St. 1975, c. 827, § 7,[11] could we reach the conclusion the commission urges. The commission, however, points to no legislative history that might overcome the clearly prospective intent of the section, and we thus rely on the plain language of the statute as enacted. *County Comm'rs of Norfolk County* v. *Norfolk County Retirement Sys.*, 377 Mass. 696, 701 (1979) (only positive demonstration of contrary legislative purpose can overcome plain text). We concur in the judge's limiting discovery to the period after the effective date of St. 1975, c. 827.[12] General Laws c. 121A, § 10, as in effect during the pre-1976 time frame, extended without qualification the provisions and protections of G. L. c. 62C, to c. 121A excise returns.

2. *The Applicability of G. L. c. 62C, § 21 (a).*

General Laws c. 63, § 71A, was repealed by St. 1976, c. 415, § 102, and replaced by G. L. c. 62C, § 21, inserted by St. 1976, c. 415, § 22.[13] The provisions of both statutes serve the same underlying intent, to preserve the confidentiality of State tax returns in the hands of public officials. *Leave* v. *Boston Elevated Ry.*, 306 Mass. 391, 402-403 (1940) (ban on disclosure by public officials cannot be circumvented by recourse to taxpayer himself); *James Millar Co.* v. *Commonwealth*, 251 Mass. 457, 464 (1925) (corporate excise returns are privileged).

---

[11] Statute 1975, c. 827, § 21, approved December 23, 1975, limited applicability of the amendment to projects undertaken and applications filed after the effective date of the enactment, March 22, 1976. That section provides in relevant part: "The provisions of this act shall not be applicable to projects undertaken or for which applications pursuant to the provisions of chapter one hundred and twenty-one A of the General Laws . . . have been filed prior to the effective date of this act . . . ."

[12] Statute 1975, c. 827, became effective ninety days after enactment, March 22, 1976.

[13] Relevant portions of G. L. c. 62C are reproduced at note 6, *supra.*

Section 21 (*a*) prohibits disclosure of information contained in a "return or document filed with the commissioner" held by the Commissioner of Revenue, G. L. c. 62C, § 1, as amended through St. 1978, c. 514, § 111, or any "employee of the Commonwealth or of any city or town . . . ." The section also contains an exception for "proceedings to determine or collect the tax." G. L. c. 62C, § 21 (*a*). We examine each aspect of the statute — the subject parties, the protectible materials, and the exception — in light of the exemption under G. L. c. 4, § 7, Twenty-sixth (*a*).

a. *The Parties and Materials Subject to Discovery.*

The language of the commission's subpoena to the department for "excise" returns clearly falls within the proscription of G. L. c. 62C. The subpoenas upon the two city agencies, by contrast, do not specify excise returns but call instead for "financial records and statements, submitted yearly . . . pursuant to G. L. Chapter 121A . . . ." Here, the effect of § 21 (*a*) depends on whether the assessor and the BRA are "employee[s] . . . of any city" and whether the records sought, if not "return[s]" are "document[s] filed with the commissioner" under that section. As to the assessor, the statute's prohibition is explicit; and, by operation of G. L. c. 121A, § 10, the assessor has such an integral role in determining the excise[14] that its c. 121A records are readily

---

[14] General Laws c. 121A, § 10, as amended through St. 1978, c. 514, § 196, provides in relevant part: "Notwithstanding the foregoing provisions of this section, the assessors of every city or town in which real or tangible personal property exempted by this section from taxation under chapter fifty-nine is situated on January first of any year shall, on or before March first in such year, determine and certify to the commissioner of revenue and to the corporation organized under this chapter which owns or leases such property the fair cash value of such property as of January first in such year. . . .

"During the period of fifteen years after the organization of a corporation under this chapter, such corporation shall pay in each calendar year to the commonwealth with respect to its corporate existence at any time within the preceding calendar year an excise equal to the sum of the following: namely, an amount equal to five per cent of its gross income in such preceding calendar year, from all sources, and an amount equal to ten dollars per thousand upon the valuation determined as hereinbefore

construed to be "document[s] filed with the commissioner" under § 21 (*a*). As to the BRA, our reading of its enabling legislation, St. 1960, c. 652, § 12, indicates "employee" status within the intendment of G. L. c. 62C, § 21 (*a*). However, it is unclear from the record before us that the BRA holds tax "return[s] or document[s] filed with the commissioner" as does the assessor.[15] The BRA has made no response here or in the court below. On the record before us, however, we conclude that to the extent the BRA possesses records predating March, 1976, and duplicating the contents of documents filed with the Commissioner of Revenue, such records are protected from discovery.

b. *The Exception Clause in § 21 (a).*

We reject the commission's characterization that its investigation is a proceeding "to determine a tax," exempt from confidentiality under G. L. c. 62C, § 21 (*a*). Without question, the enabling acts which gave birth to the Finance Commission of Boston also granted broad investigatory powers, including "matters pertaining to taxation." St. 1908, c. 562, § 1. See St. 1909, c. 486, §§ 18 and 19; *Finance Comm'n of Boston* v. *Basile,* 354 Mass. 188, 191 (1968) (1909 organic act incorporated powers and duties enumerated in 1908 act). But no statute empowers the commission to determine or collect a tax. Contrast G. L. c. 59, § 21, as appearing in St. 1971, c. 766, § 19 (assessors empowered to fix the rate of tax); G. L. c. 60, § 2, as amended by St. 1976, c. 4, § 31 (constables and sheriffs named as collectors of taxes). The commission suggests no judicial opinion upholding disclosure on the basis of this clause. *Opin-*

---

provided to be the fair cash value as of January first in the year in which the excise becomes payable of all real and tangible personal property of such corporation . . . ."

[15] In its brief Prudential asserts that the Insurance Commissioner, not the BRA, received yearly statements pertaining to the c. 121A activities of insurance companies. G. L. c. 121A, § 18. Because the issue was not part of the judgment below and because the allegation is based on the contents of Prudential's contract with the city of Boston, not submitted in evidence, we disregard this question on appeal.

*ion of the Justices*, 354 Mass. 804 (1968), which the commission cites, addressed the rights of the Attorney General to obtain tax records "for the purpose of criminal prosecution." This purpose is manifestly different from the purely investigatory function of the commission and that opinion lends no support to the commission's claim. See *Finance Comm'n of Boston* v. *Mayor of Boston*, 370 Mass. 693, 696-697 (1976) (commission's function purely investigative).

Moreover, as we read the language of the predecessor statute, in effect during the years in question, we find no exemption for proceedings to "determine" a tax.[16] G. L. c. 63, § 71A, as amended through St. 1975, c. 514, § 2. The difference in the language of G. L. c. 62C, § 21 (*a*), and the prior version at G. L. c. 63, § 71A, reinforces our conclusion that the commission's function is not so allied with the taxing power as to entitle it to disclosure. As we have already stated, both the present version, G. L. c. 62C, § 21 (*a*), and its predecessor statute embody the policy of the Commonwealth to preserve the confidentiality of State tax returns. See *Finance Comm'n of Boston* v. *McGrath*, 343 Mass. 754, 766-767 (1962) (by statute, Massachusetts tax returns privileged; but Federal returns discoverable upon showing substantial necessity); see generally W.B. Leach & P.J. Liacos, Massachusetts Evidence 147-148 (4th ed. 1967). Until the Legislature took affirmative steps to modify that policy for c. 121A corporations, St. 1975, c. 827, § 7, there was no reason to draw an exception to it.

Finally, the commission's citations to the statutory and judicial underpinnings of its authority fail to overcome the unequivocal prohibition upon the authorities named in

---

[16] General Laws c. 63, § 71A, as amended through St. 1975, c. 514, § 2, provided in relevant part: "The disclosure by the commissioner . . . or other employee of the commonwealth, or any city or town therein, of any information contained in or set forth by any return or document filed under this chapter . . . except in proceedings to collect the tax or for the purpose of criminal prosecution under this chapter . . . is prohibited." Compare *id.* with note 6, *supra*.

G. L. c. 63, § 71A (now G. L. c. 62C, § 21). Without undercutting the established discovery and investigative powers of the commission, we conclude that its subpoena power must yield to the statutory confidentiality mandate which obtained prior to March, 1976.

*Judgment affirmed.*