Agnes, Peter W., J.
Introduction
The plaintiff, Ford Motor Credit Company (hereinafter “Ford”), has filed this Motion for a Preliminary Injunction (hereinafter the “motion”), pursuant to Mass.R.Civ.P. 65, seeking a preliminary injunction enjoining Joe Doe d/b/a/ Direnzo Towing (hereinafter “Direnzo”), Able Tradesmen, Inc. (hereinafter “Able”) and Theodore H. Bosse (hereinafter “Bosse”) from causing or permitting the stripping, impairing, selling, transferring, assigning, encumbering, removing, concealing, or disposing of a 2001 Ford F-350 truck (hereinafter the “truck”) and accessories, serial # 1FMCU93105KA97542. Ford seeks the preliminary injunction upon its assertion that it holds a priority lien on the truck over the defendants.
For the reasons set forth below, the preliminary injunction is ALLOWED.
Background
On August 28th, 2001, Bosse executed a retail installment contract covering the purchase of the truck.[2] See Complaint, p. 2. Said contract has been in default since December 12, 2005 and has a present unpaid balance of $22,747.52 plus a per diem charge of $6.11 commencing January 17th, 2006. Id. On or about December 12th, 2005, Able, ajudgment creditor of Bosse in Worcester Superior Court Civil Action No. WOCV2002-02527, caused the truck to be seized by the Worcester County Deputy Sheriffs under an execution issued in said action and to be delivered to Doe, at whose premises it is currently located. Id. Ford wishes to proceed against the truck, as it has performed all conditions precedent to its right to do so, but has been hitherto unable to effect peaceful repossession thereof.[3] Id.
Ford believes that the truck is at risk of misuse, misappropriation or conversion and that if not granted immediate possession substantial losses will be incurred by Ford. Id., p. 3.
Ford cites Mass. Gen. Laws chapters 106,[4] 214,[5] and 255B[6] as controlling with respect to lien priority. Id.
Direnzo, in its opposition to Ford’s motion, cites Mass. Gen. Laws c. 159B, §6B and c. 255, §39A as the statutes governing the outcome of the dispute between Ford and Direnzo. See Limited Opposition of Direnzo Towing & Recovery to Plaintiffs Motion for Preliminary Injunction, p. 1-2. Direnzo claims that its lien takes priority over Ford’s, and thereby release of the truck is premised on Ford’s payment of statutorily incurred towing and storage charges.[7] Id., p. 1. Direnzo takes no position as to whether Ford — as a secured party— takes priority over Able Trademen — ajudgment creditor. Id.
Thus, the issue in this case is whether a first-in-time secured lien holder, i.e., Ford, takes priority over a party, i.e., Direnzo, holding a garageman’s lien, pursuant to G.L.c. 159B, §6B, through the execution of judgment by a junior judgment creditor, i.e. Able Tradesmen.
Discussion
A. Standard of Review
A party seeking a preliminaiy injunction must show a likelihood of success on the merits and, that absent injunctive relief, it will be subject to a substantial risk of irreparable harm. Packaging Industries Group v. Cheney, 380 Mass. 609, 617 (1980). Additionally, the moving party must demonstrate that the risk of harm to which it will be subjected without the preliminary injunction outweighs any possible risk of harm to the opposing party while subject to the injunction. Packaging Industries Group, 380 Mass. at 617. A court may grant the relief requested if the balance of the parties’ interests cuts in favor of the moving party. Packaging Industries Group, 380 Mass. at 617.
Viewing the facts as presented in this case, this court determines that the plaintiff is entitled to the requested relief.
B. The Contract between Ford and Bosse
It is clear that pursuant to the express terms of the contract, the plaintiff holds a security interest and is entitled to repossess the truck upon default by Bosse. Additionally, the provisions of G.L.c. 106, §9-310 apply: “When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon *716 goods in the possession of such person given' by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.”
C. Garageman’s Lien
Direnzo asserts that G.L.c. 159B, §6B is a statute which “expressly provides otherwise” and, as such, takes priority. This court disagrees. Gen. Laws c. 159B, §6B governs, inter alia, the towing away and storage of motor vehicles and liens based upon the towing away and storing. The statute provides, in pertinent part, “[W]hen such towing is ordered by the police or other public authority.. . [t]he motor vehicle storage facility shall have a lien for its proper transportation and storage charges due to them for the towing, transportation and storage . . .”
1. “Other Public Authority”
The first question is whether, in the context of G.L.c. 159B, §6B, a deputy sheriff is to be considered a “public authority.” The term “other public authority” is not defined by the statute. However, Massachusetts courts have held that a deputy sheriff is a “public authority.”
“Deputy sheriffs perform a public function as the officers charged with the primaiy duty of serving process, and the methods by which they administer their offices have to do with methods of administration affecting the county ...” Finance Commission of Boston v. Basile, 354 Mass. 188, 188-90 (1968). The function of a deputy sheriff is a necessary part of the process established by the legislature to both place parties on notice in civil actions and enforce judgments made in such. Moreover, the Sheriff and his duly appointed deputy sheriffs have police powers. See G.L.c. 37, §13.
2. Public or Private Purpose
The second question, which is implied by the statutory language of §6B, is whether the towing was undertaken for a public or private purpose. In this case, the towing was a result of a writ of execution on a private debt held by Bosse. The towing was not ordered by the police or other public authority for safety reasons such as blocking a fire hydrant or being abandoned on a public way. Rather, the towing, while effectuated by the public authority of the Sheriffs Department, was done at the direction of the court pursuant to a default judgment. The root of the action was privately, not publically, motivated. As such, the provisions of G.L.c. 159B, §6B are not factually applicable to this case.
The court is further convinced of Direnzo’s misconstruing the applicability of G.L.c. 159B, §6B by Direnzo’s citation of G.L.c. 255, §39A. This statute governs the sale by a garage of certain unclaimed vehicles when they are removed from a scene of an accident and placed for storage in the care of a garage by a member of the state police, local police, or agent of the Registry of Motor Vehicles. This statute, like G.L.c. 159B, §6B, concerns the protection of the public’s safety by officers who serve the public. In the instant case, no public interest was being protected. Able Tradesmen was, in its delivery of the writ of execution to the sheriff, collecting on a private debt. The sheriff delegated its power to seize the truck, as per the writ of execution, to Direnzo, who had the proper heavy equipment to move the truck.
D. Remedy Still Available
Any claim that Direnzo has for the reimbursement of towing and storage fees of the vehicle should be made against Able, the party who directed Direnzo to store to vehicle, not against Ford. While Mass. Gen. Laws c. 235, §36 provides for the mandatory sale of personal property seized on execution within fourteen days at public auction, such did not occur here. While Direnzo may look to Able for storage costs, Able may look to offset the storage charges which accrued above and beyond the fourteen days allowed for in the statute. See G.L.c. 235, §38.
Conclusion
This court concluded that the plaintiff has established a likelihood of success in the merits of its equitable replevin claim and the probability that the plaintiff will suffer more harm if the injunction is not granted than will the defendant if the injunction is granted.
ORDER
For the foregoing reasons, the court hereby orders and enjoins the defendants:
1. from causing or permitting the stripping, impairing, selling, transferring, assigning, encumbering, removing, concealing, or disposing of the truck; and
2. to deliver the truck to the plaintiff.

 The contract has the following express provision. “B. Security Interest: You give the Creditor a security interest in: 1. The vehicle and all parts or other goods put on the vehicle; 2. All money or goods received for the vehicle; and 3. All insurance premiums and service contracts financed for you. This secures payment of all amounts you owe under this contract. It also secures your other agreements in this contract.”

 The contract has the following express provision. “If you do not cure a default where allowed by law, the Creditor may require you to pay at once the unpaid Amount Financed, the earned and unpaid part of the Finance Charge and all other amounts due under this contract. He may repossess (take back) the vehicle, too. He may also take goods found in the vehicle when repossessed and hold them for you.”

 While the plaintiff did not cite to a section of c. 106, §9-310 is applicable.

 While the plaintiff did not cite to a section of c. 214, §1 is applicable.

 While the plaintiff did not cite to a section of c. 255B, §20A is applicable.

 Those charges, as of February 27th, 2006, amounted to $4,143.00. See Affidavit of Steve Maiorano.