Carl WELTY and Susan Welty, Plaintiffs-Respondents,

v.

David HEGGY, Defendant-Appellant.†

Court of Appeals

*No. 84–198. Submitted on briefs November 9, 1984.—*
*Decided April 18, 1985.*
(Also reported in 369 N.W.2d 763.)

† Petition to review denied.

320

For the defendant-appellant the cause was submitted on the briefs of *Frank X. Kinast* and *Christopher G. Kinast* of Beloit.

For the plaintiffs-respondents the cause was submitted on the brief of *Margaret Kemp-Williams* and *Grutzner, Byron, Holland & Vollmer, S.C.* of Beloit.

Before Gartzke, P.J., Dykman, J. and Bruce F. Beilfuss, Reserve Judge.

BEILFUSS, Reserve Judge. This is a consolidated appeal from a default judgment and an order denying defendant's motion to set aside that judgment. The judgment granted compensatory and punitive damages for defendant's intentional infliction of emotional distress and property damage.

The defendant contends on appeal that personal jurisdiction was not obtained over him because plaintiffs failed to exercise reasonable diligence in their service of process and in their attempts to obtain his post-office address for the mailing component of service by publication. The defendant further contends that the trial court abused its discretion by not setting aside the judgment pursuant to defendant's motion. We hold that the trial court acquired personal jurisdiction over the defendant and that the court did not abuse its discretion by denying relief from the judgment. We remand, however, for retrial on punitive damages because that controversy was not fully tried. Sec. 752.35, Stats.

This action was initiated in July of 1983 after a history of acrimonious and abusive conduct by the defendant toward the plaintiffs. The plaintiffs made repeated unsuccessful attempts to serve summonses on the defend-

ant at his home. Inquiries were made to determine where the defendant might be served, with no results. The defendant testified he was outside Wisconsin from mid-July 1983 to January 1984, although several witnesses saw the defendant at his home at various times during this time period. The trial court found that defendant was seen at his residence during this time period, that he had intentionally evaded service of the summons and complaint, and that he had actual notice of this action.

The plaintiffs effected service by publication and mailing. Copies of the summons and complaint were mailed to the only four addresses of defendant known to the plaintiffs; they were all "return(ed) to sender" by the postal department.

The trial court held a default hearing, and judgment was entered for plaintiffs totaling $356,163.16 plus costs of $315.74 on December 12, 1983. Punitive damages constituted $200,000 of the total judgment. The defendant moved to set aside the judgment, pursuant to sec. 806.07(1), Stats., on January 14, 1984. This motion was denied, the court concluding that the defendant failed to show excusable neglect or reasonable prudence, that the punitive damages were not excessive, and that opening the judgment would be an injustice to the plaintiffs.

*Personal Jurisdiction*

The defendant contends that plaintiffs did not invoke the court's personal jurisdiction because of improper service of process under sec. 801.11, Stats. That section's prescriptions must be followed. Actual notice alone is insufficient:

[A]ctual notice alone does not settle the question. This court has held that when a statute prescribes how service

is to be made, compliance with the statute is required for personal jurisdiction even where the defendant has actual notice of the summons and complaint. *519 Corp. v. Department of Transportation,* 92 Wis. 2d 276, 287, 284 N.W.2d 643 (1979); *Danielson v. Brody Seating Co.,* 71 Wis. 2d 424, 429, 238 N.W.2d 531 (1976). The question is, were the [statutory] provisions . . . complied with.

*Horrigan v. State Farm Ins. Co.,* 106 Wis. 2d 675, 681, 317 N.W.2d 474, 477 (1982). Section 801.11 provides in relevant part:

A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 801.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:
(1) NATURAL PERSON. Except as provided in sub. (2) upon a natural person:
(a) By personally serving the summons upon the defendant either within or without this state.

. . . .

(c) If with reasonable diligence the defendant cannot be served under par. (a) or (b), service may be made by publication of the summons as a class 3 notice, under ch. 985, and by mailing. If the defendant's post-office address is known or can with reasonable diligence be ascertained, there shall be mailed to the defendant, at or immediately prior to the first publication, a copy of the summons and a copy of the complaint. The mailing may be omitted if the post-office address cannot be ascertained with reasonable diligence.

The plain meaning of sec. 801.11(1) requires service under subsection (1)(a) to be attempted with reasonable diligence before an alternative method of service is employed. The defendant concedes "that plaintiffs exercised reasonable diligence to personally serve defendant within the State of Wisconsin"[1] but contends

---

[1] The defendant does not argue that the plaintiffs lacked reasonable diligence in serving him under sec. 801.11(1)(b), Stats.

that service "without this state" (sec. 801.11(1)(a)) was not attempted with reasonable diligence.

The supreme court has treated "reasonable diligence" as a finding of fact to be affirmed unless against the great weight and clear preponderance of the evidence. *See West v. West,* 82 Wis. 2d 158, 165, 262 N.W.2d 87, 90 (1978) ; *Span v. Span,* 52 Wis. 2d 786, 790, 191 N.W. 2d 209, 212 (1971).[2] This test is essentially the same as the clearly erroneous standard of sec. 805.17(2), Stats., which we now apply to findings made by the court. *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). The basic facts regarding plaintiffs' diligence are undisputed, however, and the determination of appropriate service of process is therefore a question of law.

---

[2] While the defendant's motion to set aside the judgment was explicitly made pursuant to sec. 806.07, Stats., which generally involves the exercise of trial court discretion, *West* states that vacation of a judgment allegedly void for lack of personal jurisdiction involves determinations of fact:

While under sec. 269.46(1), Stats. [now sec. 806.07(1)(a)], we review the exercise of the trial judge's discretion, where a claim is made that a judgment is void the question is simply whether the finding of fact made with respect to the validity or invalidity of the judgment is contrary to the great weight and clear preponderance of the evidence.

*West,* 82 Wis. 2d at 166, 262 N.W.2d at 90. *West's* conclusion is based in part on the lack of "void judgment" as a specified ground for relief under the statute governing relief from judgments. Subsequent to *West,* void judgment was added to sec. 806.07 as a basis for relief. The inclusion of void judgment in sec. 806.07 does not affect our standard of review in this case because even were the issue to be one of discretion, such discretion would have to be exercised consistent with sec. 801.11, Stats., and the facts underlying the interpretation of that statute. The question remains, ultimately, one of fact as to attempts at service, and law as to their legal significance.

Although case law defining reasonable diligence is sparse, sec. 801.11, Stats., does require pursuit of "leads or information reasonably calculated to make personal service possible." *West,* 82 Wis. 2d at 166, 262 N.W.2d at 90. Rock County deputy sheriffs made repeated attempts to personally serve the defendant at his Denture Lane home in the Town of Turtle from July through December 1983.[3] Several of the process servers knew the defendant, and knew he resided at the Denture Lane home. Inquiries regarding defendant's whereabouts were made of other deputies and Town of Turtle officers, but no other addresses were known. One of the deputies attempting service had previously inquired of the town clerk where the defendant might be found, and as a result was led to inquire at "Varney Printers" on Cross Street in Beloit, but was unable to serve the defendant. No one at Varney Printers had heard of the defendant.

The repeated attempts to serve the defendant at the Denture Lane home were reasonable in light of Mr. Welty's testimony that he observed things at the defendant's residence which led him to infer that the defendant was there at the time service was attempted. The plaintiffs saw cars parked in the driveway, clothes hung on the line, and lights on in the house. When such sightings occurred, plaintiffs phoned their attorney to suggest attempts at service. The defendant's presence was corroborated by other witnesses. Neighbors and Town of Turtle road workers personally observed the defendant at his Denture Lane home during the time service was attempted. The trial court found the defendant was seen at his residence during this period, and that the defendant intentionally evaded service. These findings of fact are not clearly erroneous.

---

[3] The trial court found that several Rock County deputies made nineteen attempts to serve the defendant.

Because the defendant was at his residence and repeated attempts at service were made, attempts to locate and serve the defendant outside the state might have been unnecessarily duplicative. But attempts to locate the defendant, through inquiries, were made to determine whether he was within or without the state. All information obtained indicated he would be found at Denture Lane. *West* suggests that under these circumstances, immediate family members should be contacted, 82 Wis. 2d at 166–67, 262 N.W.2d at 90, but the record reveals nothing with regard to the existence of such family members. Although the plaintiffs did not contact the defendant's resident caretaker, he testified he did not know the defendant's whereabouts during the latter half of 1983. The defendant testified that no one knew his address while he was gone from the Beloit area.

Because of the plaintiffs' repeated attempts to serve the defendant while he was in the Beloit area, their efforts to discover his whereabouts and the lack of leads or information as to his whereabouts while outside the state, we conclude the plaintiffs exercised reasonable diligence to serve the defendant under sec. 801.11 (1) (a), Stats.

The plaintiffs effected service by publication after failing to serve the defendant personally. The defendant contends that plaintiffs failed to serve him by publication properly because reasonable diligence was not exercised to obtain his post-office address. Section 801.11 (1) (c), Stats., provides:

If with reasonable diligence the defendant cannot be served under par. (a) or (b), service may be made by publication of the summons as a class 3 notice, under ch. 985, and by mailing. *If the defendant's post-office address is known or can with reasonable diligence be*

*ascertained, there shall be mailed to the defendant,* at or immediately prior to the first publication, *a copy of the summons and a copy of the complaint.* The mailing may be omitted if the post-office address cannot be ascertained with reasonable diligence. [Emphasis added.]

The plaintiffs mailed a copy of the summons and complaint at the time of first publication to the four addresses of the defendant known to the plaintiffs. The plaintiffs' attempts to personally serve the defendant had not revealed any other addresses.

The defendant previously received mail at at least one of the addresses used by the plaintiffs, a post-office box, but had several months before cancelled it after a squabble with the post office. He did not file a forwarding address in part to avoid "junk mail." He also refused to provide a mail receptacle at his home on Denture Lane.

During the time of the mailing, the defendant did receive mail at Varney Printers in Beloit at 613 Cross Street. Inquiries at this location by plaintiffs' process server attempting service in a previous action had resulted in no information regarding the defendant. Only a few people were informed of this address, including the defendant's caretaker, insurance agent, and his attorney from previous actions.

It is not clear from the record whether the plaintiffs knew the identity of these people, or whether the plaintiffs were able to contact them. Under these circumstances, "reasonable diligence" did not require that they be pursued for defendant's post-office address.

The defendant contends that the plaintiffs' attorney knew that defendant was the principal beneficiary of his father's estate and that a certain Beloit bank was trustee of a trust created by defendant's father, and also that the plaintiffs' attorney knew the father's per-

sonal representative at that bank, and yet the plaintiffs' attorney purposely avoided contacting the bank. Accepting this as true, we hold that under these circumstances reasonable diligence does not require the pursuit of such a remote source for either the post-office address or location of the defendant. The bank, in any event, knew only of the Denture Lane address for the defendant and not of the alleged 613 Cross Street address.

The defendant also notes that plaintiffs received a package from defendant on November 26, 1983 bearing a 613 Cross Street return address. This package arrived three months after publication and mailing and was therefore of no assistance to plaintiffs. In addition, the plaintiffs believed the "gift" to be a hoax. Mr. Welty referred to the package as "booby-trapped," and therefore something the defendant would not put his true address on. Under these circumstances no mailing to 613 Cross Street was required. While the plaintiffs' efforts to discover defendant's post-office address might have been more strenuous, we decline to hold them not reasonably diligent.

The attempts at service and mailing were generally hampered by the defendant's process dodging. The trial court found the defendant to have "intentionally evaded the service of the summons and the complaint in this action." This finding is supported by ample testimony. The plaintiffs mailed copies of the summons and complaint to the addresses known for the defendant, made inquiry as to other addresses, and could have found the 613 Cross Street address only through the exercise of extraordinary diligence. We therefore hold under these circumstances that plaintiffs complied with sec. 801.11 (1) (c), Stats.

The defendant contends here for the first time that plaintiffs' attempts at service fell short of due process standards because "plaintiffs did not truly desire to give actual notice of the suit to defendant." Constitutional issues raised for the first time on appeal are generally not considered by this court. In *Boeck v. State Highway Comm.*, 36 Wis. 2d 440, 447–48, 153 N.W.2d 610, 614 (1967) the supreme court stated:

> Plaintiffs on this appeal have for the first time attacked the constitutional adequacy of notice by mail under the circumstances of this case. This court has consistently taken the position that it will not ordinarily consider constitutional issues presented for the first time on appeal.

Constitutional issues raised initially on appeal may be addressed when in the interests of justice or when there are compelling reasons to do so, provided both parties have briefed the issue and no issue of fact need be resolved. *See In Interest of Baby Girl K.*, 113 Wis. 2d 429, 448, 335 N.W.2d 846, 856 (1983), *appeal dismissed*, —— U.S. ——, 104 S. Ct. 1262 (1984) ; *Sambs v. Brookfield*, 66 Wis. 2d 296, 314, 224 N.W.2d 582, 592 (1975).

· Neither compelling reasons nor the interest of justice require us to address defendant's constitutional claim, and we therefore decline to address it. Defendant's constitutional argument is essentially an attack on plaintiffs' reasonable diligence which we have already resolved in plaintiffs' favor insofar as sec. 801.11(1), Stats., requires it. The defendant was found to have actual notice of the action and to have purposely avoided service. Testimony in the record supports these findings, which are not clearly erroneous. Under these circum-

stances we decline to address the defendant's constitutional argument.

## Motion to Set Aside Judgment

The defendant moved for relief from the default judgment under sec. 806.07(1)(h), Stats., which provides relief for "[a]ny other reasons" than those enumerated in sec. 806.07(1)(a)–(g). The defendant contends he was entitled to relief because default judgments are disfavored, evidence was improperly admitted, the evidence was insufficient, the damages were excessive, he acted promptly for relief stating a meritorious defense, and because he lacked actual notice of the plaintiffs' claim.

The trial court stated in the hearing on defendant's motion that relief under sec. 806.07(1)(h), Stats., should not be granted where the movant failed to show either a reasonable degree of prudence or excusable neglect, citing *Hansher v. Kaishian,* 79 Wis. 2d 374, 391, 255 N.W.2d 564, 573 (1977). The trial court found that defendant refused to accept mail at his residence, evaded service of the summons and complaint, and had actual notice of the pending action. The court concluded that the defendant was "neglectful, careless and inattentive in this matter" and that he failed to demonstrate he had "exercised a reasonable degree of prudence." The court denied the motion.

*Hansher* required excusable neglect or reasonable prudence because the statutory grounds for relief alleged in *Hansher* required such a showing. *Hansher* did not address the "[a]ny other reasons" standard for relief relied on by the defendant. *Hansher* construed a predecessor to sec. 806.07(1)(a), Stats., which authorized relief from a judgment for "mistake, inadvertence, surprise or excusable neglect." *See* sec. 269.46(1), Stats.

(1973). A different subsection of sec. 269.46 (1973), subsection (3), which was not construed in *Hansher*, contained a counterpart to the sec. 806.07(1)(h) catch-all provision on which defendant premised his motion. Another subsection of sec. 806.07(1) states excusable neglect as a ground for relief, but subsection (h) simply requires any other reasons which justify relief.

Section 806.07(1)(h), Stats., and sec. 269.46(3), Stats. (1973), were analogized in *In Matter of Estate of Smith*, 82 Wis. 2d 667, 672–73, 264 N.W.2d 239, 242 (1978). The court concluded the catch-all provision conferred a broader discretionary power than that under the excusable neglect ground, *Id.*,[4] and affirmed a decision to grant relief from a judgment. The decision to grant relief was premised on the trial court's determination that it "had failed to give sufficient consideration to several matters of evidence . . . . In effect, the judge stated that his original findings and conclusions were based upon insufficient consideration of the evidence and of the law . . . ." *Id.* at 674, 264 N.W.2d at 242–43. Excusable neglect was not an issue, thus implicitly suggesting a distinction between the subsection (h) "other reasons" and the subsection (a) "excusable neglect."

Federal decisions construing the analogous federal rule 60(b)(6)[5] hold the catch-all provision to be exclusive of other enumerated grounds in the rule.[6] The Wiscon-

[4] *See also Stradinger v. City of Whitewater*, 89 Wis. 2d 19, 28 n 4, 277 N.W.2d 827, 830 (1979).

[5] Fed. R. Civ. P. 60(b) and sec. 806.07, Stats., are substantial equivalents. *Ennis v. Ennis*, 88 Wis. 2d 82, 91, 276 N.W.2d 341, 344 (Ct. App. 1979).

[6] *Klapprott v. United States*, 335 U.S. 601, 614–15 (Black, J., concurring) ("In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power . . . to vacate judgments"), *modified*, 336 U.S. 942 (1949); *De Filippis v. United States*, 567 F.2d 341, 343 (7th Cir. 1977)

sin Supreme Court recently stated that subsection (a) and (h) are mutually exclusive, *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 545, 363 N.W.2d 419, 423 (1985), but noted that:

> Since almost every conceivable ground for relief may arguably come within subsections (a) through (g), a strict mutual exclusivity approach might render subsection (h) superfluous. Subsection (h) should be applied when the petition alleging factors arguably within (a), (b), or (c) also alleges extraordinary circumstances that constitute equitable reasons for relief. . . . [F]inality is important . . . . Subsection (h) should be used only when the circumstances are such that the sanctity of the final judgment is outweighed by "the incessant command of the court's conscience that justice be done in light of *all* the facts." *Bankers Mtg. Co. v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927 (1970) (emphasis in original).

*Id.* at 549–50, 363 N.W.2d at 425–6.

The defendant's excusable neglect or reasonable prudence may be relevant to a motion under sec. 806.07 (1)(h), Stats., insofar as they help establish or are accompanied by extraordinary circumstances justifying relief. The trial court's emphasis on defendant's lack of excusable neglect and reasonable prudence was therefore not misplaced despite the exclusivity of sec. 806.07(1) (h). The "[a]ny other reasons" ground for relief cannot operate to relieve a party from the consequences of its purposeful avoidance of a lawsuit. The supreme court noted in *M.L.B.*, 122 Wis. 2d at 556 n. 9, 363 N.W.2d at 428, the "preference for an adversarial determination of

---

("Rule 60(b)(6) . . . is separate from and exclusive of the other five grounds specified in Rule 60(b)"); *Byron v. Bleakley Transportation Co.*, 43 F.R.D. 413, 415 (S.D. N.Y. 1967) ("the category created by Rule 60(b)(6) is exclusive of the more particularized reasons for setting aside a default outlined in the Rule.")

the merits" in federal case law, but acknowledged that this preference is often negated by a petitioner's conscious choice to permit the action to proceed to judgment. "Relief is frequently denied when the petitioner had earlier made a fair and deliberate choice at the time judgment was rendered . . . ." *Id.* The seventh circuit's decision in *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1206 (7th Cir. 1984) is persuasive:

[R]ule 60(b) is applied liberally in the default judgment context only in the exceptional circumstance where the events contributing to the default judgment have not been within the meaningful control of the defaulting party, or its attorney. Although a default judgment is a harsh sanction and the law does favor trials on the merits, these considerations must be balanced against the need to promote efficient litigation and to protect the interests of all litigants.

The circumstances leading to the default judgment were "within the meaningful control of the defaulting party" who chose to permit the default. Further, the defendant's contentions for relief present not exceptional circumstances, but instead simple disputes with the trial court's fact finding.

The standard governing the discretionary authority to grant relief under sec. 806.07, Stats., has been analogized to an "interest of justice" standard. *See Conrad v. Conrad,* 92 Wis. 2d 407, 418, 284 N.W.2d 674, 679 (1979). The statute "must be liberally construed to allow relief . . . 'whenever such action is appropriate to accomplish justice.'" *Id.* (quoting *Klapprott v. United States,* 335 U.S. 601, 615 (Black, J., concurring), *modified,* 336 U.S. 942 (1949)).

Opening the entire judgment would not serve the ends of justice. The court found that defendant purposely avoided service, and had actual notice of the action.

The court also stated the following as a finding of fact from the default hearing:

I will say for the record that in the view of this court I have practiced law for thirty-one years and now I have been a judge for four years, I have not seen any conduct in the opinion of the court more extreme and more outrageous directed to peace-loving, fine people in a manner specifically calculated not only to destroy the property rights of the plaintiffs but to destroy the very lives and existence of the plaintiffs.

We conclude the trial court did not abuse its discretion by denying defendant's sec. 806.07 (1) (h), Stats., motion. However, the punitive damages award must be reconsidered because the record does not reveal with reasonable certainty the extent of the defendant's assets.

The trial court considered the defendant's assets in assessing punitive damages, including assets presumptively devolving to the defendant from his father's estate and trust. The trial court ordered assets transferred from the father's trust to satisfy the judgment against the defendant, but neither the plaintiffs nor the court knew the identity of the trust's beneficiary or beneficiaries.

The plaintiffs correctly contend that the defendant's wealth is only one factor for consideration in assessing punitive damages. But where the defendant's assets are considered, reliance upon them must be rational and premised on fact. We remand for retrial solely on punitive damages because the record reflects uncertainty on the assets available to the defendant and the real controversy has, therefore, not been fully tried. Sec. 752.-35, Stats.; *See Hanz Trucking, Inc., v. Harris Brothers Co.,* 29 Wis. 2d 254, 269, 138 N.W.2d 238, 246 (1965) (damages ordered retried because issue not fully tried).

*By the Court.*—Judgment and order affirmed in part and reversed in part and claim remanded.