SPRAYER SUPPLY, INC., Plaintiff-Respondent,

v.

James FEIDER, d/b/a Feider Farms, and Security
First National Bank of Sheboygan, Defendants,

STATE BANK OF RANDOM LAKE, Defendant-
Appellant.†

Court of Appeals

*No. 85–2323. Submitted on briefs July 14, 1986.—Decided
September 17, 1986.*

(Also reported in 395 N.W.2d 624.)

† Petition to review pending. This petition was not decided at
the time the volume went to press. Its disposition will be reported in a
later volume.

For the defendant-appellant, the cause was submitted on the briefs of *James S. Grodin*, of *Howard, Peterman, Solochek, Grodin & Nashban, S.C.*, of Milwaukee.

For the plaintiff-respondent, the cause was submitted on the brief of *Ludwig L. Wurtz*, of *Sorenson-Wurtz Law Office* of Ripon.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   State Bank of Random Lake, the garnishee, unsuccessfully sought to set aside a default judgment obtained against it by Sprayer Supply, Inc. in a garnishment action. On appeal, the bank claims that the circuit court abused its discretion in declining to reopen the default judgment because the judgment was "void" for lack of proper service upon the principal defendant, James Feider, and because the bank should be relieved on equitable grounds from the operation of the judgment pursuant to sec. 806.07(1)(h), Stats. Finding no abuse of discretion in the circuit court's ruling that the judgment was valid or in its analysis under sec. 806.07(1)(h), we affirm.

Sprayer Supply filed a garnishment summons and complaint on January 25, 1983, naming State Bank of

Random Lake and Security First National Bank of Sheboygan as garnishee defendants. The complaint alleged that Sprayer Supply had obtained a judgment against the principal defendant, James Feider, Sr., d/b/a Feider Farms, in the amount of $29,306.10 and believed the garnishees to be indebted to or holding property belonging to Feider. State Bank was served on January 27, 1983 and the garnishment tender check for $3 was cashed. James Feider was served on the same date by substituted service on his son, James Feider, Jr.

State Bank never filed a garnishee answer, and on March 24, 1983, Sprayer Supply moved for default judgment pursuant to sec. 806.02, Stats. Default judgment in the amount of $29,946.75 was granted the same day, and the garnishment action was dismissed as to Security First National. The judgment was not docketed until January 22, 1985.

Although State Bank does not dispute being served originally, it claims no one at the bank knew of the garnishment action or the default judgment until February 8, 1985 when a bank officer saw notice of the docketing of the judgment in a trade publication. On May 16, 1985, the bank filed a motion to set aside the default judgment.

The circuit court denied State Bank's motion on the grounds that: (1) the portion of the motion seeking relief based on the bank's mistake, inadvertence or excusable neglect was untimely;[1] (2) the judgment was not void on jurisdictional or procedural grounds, and (3)

---

[1] A motion for relief from a judgment on the ground of mistake, inadvertence, surprise, or excusable neglect must be made not more than one year after the judgment was entered. Sec. 806.07(1)(a) and (2), Stats.

relief from the judgment was not required in the interest of justice.

The determination of whether to set aside a default judgment is addressed to the sound discretion of the trial court and will be reversed only upon clear abuse of discretion. *Maier Construction, Inc. v. Ryan,* 81 Wis.2d 463, 472, 260 N.W.2d 700, 704 (1978).

State Bank's jurisdictional argument is that service of the garnishment summons upon James Feider, Sr. did not comply with the requirements of sec. 801.11, Stats. As a result, the bank contends, the circuit court lacked jurisdiction in the garnishment action, rendering the default judgment void.

We observe preliminarily that both the trial court and the parties incorrectly perceive the law in this regard. While service of the garnishee summons and complaint upon the principal defendant is required, *see* sec. 812.07, Stats., such service is not a prerequisite to the court's exercise of jurisdiction in the garnishment action but is merely notice of a proceeding *in rem,* jurisdiction over the *res* being acquired by service upon the garnishee defendant. *Winner v. Hoyt,* 68 Wis. 278, 288–89, 32 N.W. 128, 132 (1887). However, prior to 1965 the statute section requiring service upon the principal defendant provided that failure to make such service rendered service on the garnishee void, depriving the court of jurisdiction over the *res*. Section 267.06, Stats. (1963); *Mahrle v. Engle,* 261 Wis. 485, 490, 53 N.W.2d 176, 179 (1952).

The garnishment chapter was amended by ch. 507, Laws of 1965. Section 812.07, Stats., formerly sec. 267.07, Stats. (1965), no longer provides that failure to

401

serve the principal defendant renders service on the garnishee defendant void. Our supreme court addressed the significance of this change in *Liberty Loan Corp. v. Eis*, 69 Wis.2d 642, 647–48, 230 N.W.2d 617, 620 (1975), and held that while a judgment rendered when the statutory requirements have not been met is erroneous, the error is not jurisdictional. *Id.* at 648, 230 N.W.2d at 620.

As a result, even were the service upon James Feider, Sr. insufficient, the default judgment in this action would not be void. Rather, it would be an erroneous judgment which the trial court could, in the exercise of its discretion, set aside. *See id.* A motion for relief from such a judgment would fall within the ambit of sec. 806.07(1)(h), Stats., since the specific grounds upon which the trial court may grant relief from judgments contained in sec. 806.07(1)(a) through (g) do not refer to erroneous judgments.

Nevertheless, the initial inquiry for the trial court remains the same: whether service on Feider satisfied the statutory requirements. Section 812.07, Stats., requires service upon the principal defendant "as required for the exercise of personal jurisdiction under ch. 801."[2]

Section 801.11, Stats., provides in relevant part:

> A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 801.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:

---

[2] Consistent with the *Liberty Loan* court's holding that failure to properly serve the principal defendant is not jurisdictional error, we read "[service] as required for the exercise of personal jurisdiction under ch. 801" as a descriptive phrase, not a requirement that the court obtain personal jurisdiction over the principal defendant.

(1) NATURAL PERSON. Except as provided in sub. (2) upon a natural person:

(a) By personally serving the summons upon the defendant either within or without this state.

(b) If with reasonable diligence the defendant cannot be served under par. (a), then by leaving a copy of the summons at the defendant's usual place of abode within this state in the presence of some competent member of the family at least 14 years of age, who shall be informed of the contents thereof.

State Bank contends that there is insufficient evidence that Deputy Sheriff Ernst Spelshaus exercised reasonable diligence in attmepting to personally serve James Feider, Sr. before giving the summons to James Feider, Jr. The bank also claims that substituted service upon Feider, Jr. was not made at Feider, Sr.'s "abode."

Our supreme court has treated "reasonable diligence" as a finding of fact to be affirmed unless against the great weight and clear preponderance of the evidence or, in the phraseology of the current statute, sec. 805.17(2), Stats., unless clearly erroneous. *Welty v. Heggy*, 124 Wis.2d 318, 324, 369 N.W.2d 763, 767 (Ct. App.), *cert. denied*, —U.S.—, 106 S.Ct. 344 (1985).

The circuit court held a hearing to determine the facts surrounding Deputy Spelshaus' attempts to serve James Feider, Sr. The court heard testimony by Spelshaus, assisted by the deputy's contemporaneous worksheets. Spelshaus stated that he attempted to serve Feider, Sr. at his home on January 26, 1983 but Feider was not there. Spelshaus returned the next day, again did not find Feider at home, and at that time effectuated substituted service upon James Feider, Jr. Spelshaus also testified that he served James Feider, Sr. either by personal or substituted service, eighty-four times from 1980 to the date of the hearing.

The circuit court concluded that due to the very large number of times Deputy Spelshaus had served Feider, Sr. in connection with his financial difficulties during that general period, Spelshaus was well aware of circumstances at the Feider farm and, as a result, was justified in assuming that after two unsuccessful attempts at personal service it was proper to serve Feider, Jr. The court ruled that due and reasonable diligence under the facts and circumstances known to Spelshaus had been established. We cannot conclude that the trial court's finding was clearly erroneous.

State Bank also contends that insufficient evidence established that substituted service was effected at the "abode" of Feider, Sr. as required by sec. 801.11(1)(b), Stats. Apparently, Feider's home and meat-packing plant were situated on contiguous parcels of land and there existed some uncertainty as to whether service upon Feider, Jr. was made at the plant or at the house. Deputy Spelshaus' records stated that service upon Feider, Jr. was made at the "Feider residence."

The circuit court found that regardless of whether the buildings were located on parcels with distinct legal descriptions, the land and buildings were contiguous and together constituted Feider's place of business and home. We hold the circuit court's finding that service was effected at Feider's abode is not clearly erroneous. The circuit court, therefore, properly held the default judgment not to be "void"—more correctly, "erroneous"—for inadequate service upon Feider. Thus, denial of relief on this ground was not an abuse of discretion.

The remaining ground upon which State Bank argues it should be relieved from the judgment is that

equity so requires. Such a ground falls within the ambit of sec. 806.07(1)(h), Stats., which provides that in addition to the specific grounds for relief provided in sec. 806.07(1)(a) through (g), relief may be granted for "[a]ny other reasons justifying relief from the operation of the judgment."

State Bank claims that the circuit court abused its discretion in failing to consider the factors relevant to a proper analysis under sec. 806.07(1)(h), Stats., as described in *State ex rel. M.L.B. v. D.G.H.*, 122 Wis.2d 536, 552-53, 363 N.W.2d 419, 427 (1985).

In *M.L.B.*, the supreme court stated that since almost every ground for relief from a judgment may arguably fall within sec. 806.07(1)(a) through (g), Stats., a strict mutual exclusivity approach might render subsec. (h) superfluous. *Id.* at 549, 363 N.W.2d at 425. Therefore, the court held, subsec. (h) should be applied when a petition alleging factors arguably within subsec. (a), (b) or (c) also alleges extraordinary circumstances that constitute equitable reasons for relief. *Id.* at 549-50, 363 N.W.2d at 425-26. The circuit court's task is to evaluate the facts set forth in the petition to determine whether, if true, they would constitute extraordinary circumstances justifying relief. *Id.* at 553, 363 N.W.2d at 427. Subsection (h) is to be used only when the circumstances are such that the sanctity of the final judgment is outweighed by "the incessant command of the court's conscience that justice be done in light of *all* the facts." *Id.* at 550, 363 N.W.2d at 426 (quoting *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927 (1970)) (emphasis in original).

██
We conclude that the circuit court in this case evaluated the facts asserted in State Bank's petition and in the exercise of its discretion reasonably concluded that the circumstances did not justify relief on equitable grounds.

State Bank asserted that the default judgment was an unmerited windfall to Sprayer Supply and an undeserved loss to the bank because State Bank had a meritorious defense to the garnishment action.[3] The bank also pointed to the "rather bizarre set of circumstances surrounding the judgment," including "the whole question of how service and failure to answer even happened" and certain alleged inconsistencies and deficiencies in the pleadings and judgment. Finally, the bank argued that Sprayer Supply's two-year delay in docketing the default judgment prejudiced the bank's ability to act promptly in moving to set aside the judgment.

The circuit court rejected these claims, concluding that: (1) the bank was not an unsophisticated litigant and was aware of its obligations as a garnishee defendant; (2) it was unbelievable that the bank could cash the garnishee fee check but have no memory of a garnishment complaint seeking $29,306.10, especially if Feider was, as the bank claimed, indebted to the bank for $220,500.00, and (3) the bank was dilatory in seeking relief even after learning of the judgment.

State Bank urges us to reverse on the ground that the circuit court did not specifically address certain factors, described in *M.L.B.* as relevant to the circuit court's exercise of discretion in weighing the competing

---

[3] State Bank claims that at the time of the garnishment action James Feider's account was inactive, with a balance of $5.21, and Feider was indebted to the bank for over $200,000.

interests of finality of judgments and relief from unjust judgments.

The relevant portion of *M.L.B.* reads as follows:

> As might be expected, the federal and state cases do not reveal a complete list of what facts constitute extraordinary circumstances. Because subsection (h) invokes the sensibilities of the court, the court must consider a wide range of factors, and it is difficult to articulate the criteria on which the finding of extraordinary circumstances is based. The court should not interpret extraordinary circumstances so broadly as to erode the concept of finality, nor should it interpret extraordinary circumstances so narrowly that subsection (h) does not provide a means for relief for truly deserving claimants. A final judgment should not be hastily disturbed, but subsection (h) should be construed to do substantial justice.
>
> In exercising its discretion, the circuit court should consider factors relevant to the competing interests of finality of judgments and relief from unjust judgments, including the following: whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.

*M.L.B.* at 552–53, 363 N.W.2d at 427.

*M.L.B.* was not a default judgment case.[4] The *M.L.B.* factors are meant to assist the circuit courts in determining whether extraordinary circumstances justifying relief surround a particular judgment, and the factors are indeed relevant to such a determination with regard to nondefault judgments such as that in *M.L.B.* However, the *M.L.B.* factors are simply not necessarily relevant to whether extraordinary circumstances exist as to a default judgment, because some or all of the listed factors are present in almost every default judgment situation.

A default judgment is in many instances the result not of the conscientious, deliberate and well-informed choice of the defendant, but rather of the defendant's mistake, neglect or inadvertence. Default judgment often occurs precisely because the defendant lacked effective assistance of counsel. By definition, little or no judicial consideration of the merits has taken place and often a meritorious defense does exist. In short, the existence of any of the *M.L.B.* factors is not, standing alone, likely to be "extraordinary" as to a default judgment.

---

[4] In *M.L.B.*, D.G.H. sought relief from an out-of-wedlock paternity agreement. The supreme court held the following factors, if true, to be extraordinary circumstances justifying relief: (1) M.L.B., the child's mother, lied about having no sexual partner other than D.G.H. during the conceptive period; (2) on the basis of that lie, D.G.H. agreed to be designated the father; (3) at the time, D.G.H. was eighteen years old, unemployed and had no advice of counsel; (4) no blood tests were taken; (5) D.G.H. could not remember being informed he had a right to a blood test or that he could consult an attorney before signing the paternity agreement; (6) blood tests later conclusively revealed D.G.H. not to be the child's father, and (7) a court's failure to reopen the issue of paternity has significant future ramifications for the adjudged father and child.

Were we to hold that a circuit court's failure to consider the *M.L.B.* factors in determining whether to set aside a default judgment constitutes an abuse of discretion, we would be opening the doors to a flood of litigation, much of it meritless, to set aside aged default judgments. *Cf. M.L.B.* at 557, 363 N.W.2d at 429. Such a result is contrary to the interest in finality of judgments. *See id.* at 556–57, 363 N.W.2d at 428–29.

The circuit court addressed State Bank's contentions and reasonably, we hold, found them not to justify relief on equitable grounds. The court's decision reflected a proper exercise of discretion.

*By the Court.*—Order affirmed.