Susan WELTY, Personal Representative of the
Estate of Carl Welty, deceased, and Susan
Welty, Cross-Appellants,

v.

David HEGGY, Cross-Respondent.

Carl WELTY and Susan Welty, Plaintiffs-
Respondents,

v.

David HEGGY, Defendant-Appellant.†

Court of Appeals

*Nos. 86–0700, 86–1288. Submitted on briefs March 23, 1988.—*
*Decided July 21, 1988.*

(Also reported in 429 N.W.2d 546.)

† Petition to review denied.

For the cross-appellants and plaintiffs-respondents the cause was submitted on briefs of *Edward Grutzner* and *Grutzner, Byron, Holland & Vollmer, S.C.,* of Beloit.

For the cross-respondent and defendant-appellant the cause was submitted on the briefs of *Frank X. Kinast* and *Kinast Law Office* of Beloit.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J. Susan Welty and the estate of her deceased husband, Carl, appeal from $25,000 punitive damage awards to each in a judgment

entered following the partial retrial we ordered in *Welty v. Heggy,* 124 Wis. 2d 318, 369 N.W.2d 763 (Ct. App. 1985), *cert. denied,* 474 U.S. 947 (1985). David Heggy cross-appeals.

The issues in the Weltys' appeal are whether (1) substitution of a new trial judge for the retrial was improper; (2) the trial court should have determined only whether the original $200,000 punitive damages award was rational and based on fact; (3) if the court was entitled to make a new award, it should have considered the evidence at the first trial concerning Heggy's acts and the award is too low; and (4) Heggy's net worth exceeds that found by the trial court. We conclude that the substitution was proper, the court correctly applied our mandate in *Welty I,* whether the award is too low is not reviewable, and the court correctly measured Heggy's net worth.

The issues in Heggy's cross appeal are whether: (1) although the original judgment was entered on his default, he was entitled to defend at the retrial; (2) he was entitled to a retrial by jury; and (3) punitive damages are unwarranted. We conclude that because of his default, Heggy had no right to defend, and no right to a jury, and that the propriety of awarding punitive damages is not open to relitigation.

1. *Case History*

In 1983, the Weltys brought this tort action "after a history of acrimonious and abusive conduct" by Heggy. *Welty I* at 321, 369 N.W.2d at 765–66. Heggy defaulted. The trial judge said that never before had he seen conduct "more extreme and more outrageous directed to peace-loving, fine people in a manner specifically calculated not only to destroy the property rights of the plaintiffs but to destroy the very lives and existence of plaintiffs." *Id.* at 334, 369 N.W.2d at 771.

The court awarded a default judgment in favor of the Weltys for $356,163.16, including $200,000 punitive damages. *Id.* at 322, 369 N.W.2d at 766. Heggy later appeared and moved to set aside the judgment and for leave to defend the action. The trial court denied the motion, and Heggy appealed.

We affirmed the order denying Heggy's motion to set aside the judgment and to defend. We concluded, however, that the punitive damages award "must be reconsidered because the record does not reveal with reasonable certainty the extent of the defendant's assets." *Welty* at 334, 369 N.W.2d at 771. We noted:

> The plaintiffs correctly contend that the defendant's wealth is only one factor for consideration in assessing punitive damages. But where the defendant's assets are considered, reliance upon them must be rational and premised on fact. We remand for retrial solely on punitive damages because the record reflects uncertainty on the assets available to the defendant and the real controversy has, therefore, not been fully tried.

*Id.*

On remand, a new trial judge was assigned at Heggy's request. The trial court refused to allow Heggy to defend the retrial and denied his request for a jury. The court took evidence, including testimony by Heggy.[1]

The trial court found that Heggy's assets, including his interest in a trust to which we referred in *Welty I,* amounted to $523,627.35, and his liabilities totaled $312.471.48, leaving Heggy with a $211,155.87 net worth. The court concluded that the $200,000

---

[1]Heggy's attorney was offered but declined the right to cross-examine Heggy following his examination by Welty's attorney.

punitive damage award was excessive, since it would exceed Heggy's net assets which, the court noted, were subject to yet uncalculated income taxes,[2] trustee administrative expenses and interest. The court concluded that the $200,000 award was so large relative to Heggy's ability to pay that it inflicted a penalty disproportionate to his wrongdoing and shocked the court's conscience. The court concluded that considering the character and nature of Heggy's conduct, the damage he caused and the potential damage he might have caused, and his assets and ability to pay, punitive awards of $25,000 to Carl Welty and $25,000 to Susan Welty served the objectives of punishment and deterrence. Judgment for those amounts was entered.

2. *Substitution*

Weltys contend that the chief judge of the district erred in assigning a new trial judge at Heggy's request. Weltys contend that because Heggy had defaulted and may not file an answer or other responsive pleadings, he may not request a substitution under sec. 801.58(7), Stats., which provides in relevant part:

> If upon an appeal from a judgment ... the appellate court orders a new trial or reverses or modifies the judgment ... as to any or all of the parties in a manner such that further proceedings in the trial court are necessary, any party may file a request under sub. (1) within 20 days after the filing of the remittitur in the trial court whether or not another request was filed prior to the time the appeal ... was taken.

---

[2]Heggy testified that he had filed no state or federal income tax returns for 1982, 1983, 1984 and 1985.

Because the issue is one of law, we do not defer to the ruling of the chief judge, but we affirm it.

In *Welty I,* we partially reversed the judgment and ordered further proceedings. Section 801.58(7), Stats., therefore applies. Section 801.58(7) contains no exception applicable to a defendant who appeals from a default judgment and obtains a mandate directing further proceedings in the trial court.

■

On another occasion we declined to create an exception to sec. 801.58(7), Stats., because we concluded that such a decision is "better left to the supreme court." *State ex rel. Oman v. Hunkins,* 120 Wis. 2d 86, 91, 352 N.W.2d 220, 223 (Ct. App. 1984). For the same reason, we decline to fashion an exception to fit the facts before us.

3. *Review of Evidence at First Trial*

Weltys contend that the second trial judge erred by considering only Heggy's assets in comparison to the size of the $200,000 judgment, without reviewing, reconsidering or rehearing the evidence of Heggy's wrongful acts. On the contrary, the trial court's findings and conclusions show that the court considered the grievousness of Heggy's actions. No rehearing regarding those matters was necessary.

The Weltys' real argument is that the $25,000 punitive awards are too low. They support that argument by comparing the ratio of the compensatory and punitive damage awards in this case with the ratio in ten other reported cases. We conclude that the issue is nonreviewable.

■

It is settled law that the assessment of punitive damages lies entirely in the discretion of the jury, not in any right of the person wronged. *Wangen v. Ford*

*Motor Co.,* 97 Wis. 2d 260, 301, 294 N.W.2d 437, 458 (1980). "The amount awarded can never be unreasonably low." *Id.* at 302, 294 N.W.2d at 458. For this reason, "only *one* area of judicial control over the discretion of the jury has been recognized. This area of judicial control is over *excessive* punitive damage awards." Ghiardi and Kircher, *Punitive Damages L. & Prac.* sec. 5.39 (1987) (emphasis added). The same rule should apply to punitive awards made by a court sitting without a jury.

4. *Heggy's Net Worth*

The default judgment was entered in December 1983. The retrial on remand was held on February 19, 1986, and the trial court determined Heggy's net worth as of that date.

█

If, as here, the assessment of punitive damages takes into account the defendant's wealth, then that wealth must be measured by net worth, the difference between the value of the defendant's assets and liabilities. Any other measure is illusory. Net worth is usually measured as of the date of trial but need not meet that date exactly and need only be reasonably accurate. *Dalton v. Meister,* 52 Wis. 2d 173, 181–82, 188 N.W.2d 494, 499 (1971).

Here Heggy's net worth was determined as of the date of the retrial on remand rather than the trial date. Net worth must be measured as of some particular moment, and no party contests the trial court's choice of dates. Rather, Weltys challenge the court's having excluded certain items from Heggy's assets and having deducted other items to measure his net worth.

The first exclusion is Heggy's residence, which he no longer owned as of the retrial date. The trial court

found that on March 22, 1984 Heggy conveyed his home as a gift to Suzanne Hall.[3] Weltys do not contest the factual or legal basis for the mixed finding of fact and law that the conveyance was a gift. The court excluded the value of the home from Heggy's assets, and Weltys assert that this was error.[4] We disagree.

Punitive damages are awarded to punish the defendant and deter outrageous conduct. *Fahrenberg v. Tengel,* 96 Wis. 2d 211, 222, 291 N.W.2d 516, 521 (1980). If the threat of a punitive award causes the defendant to strip himself of property, the punishment is self-inflicted. That punishment will probably exceed the increase to the punitive award which might otherwise have been made.[5] Punitive damages "are a windfall to the plaintiff." *Tucker v. Marcus,* 142 Wis. 2d 425, 453, 418 N.W.2d 818, 829 (1988). For that reason, and because the law's goal of punishment is met, a plaintiff cannot complain that the defendant chose another and greater punishment than the one which would have benefited the plaintiff.

The facts of this case justify a suspicion that Heggy has not completely stripped himself of his

---

[3] Heggy testified that he and Hall had been living together for approximately eight years and he wanted to provide her with a home in the event of his death. He continues to live in the home.

[4] The trial court found that property had been valued at $67,000. Heggy had insured it for $112,000. Under our analysis, the value is immaterial. No finding was made as to whether the property was Heggy's homestead.

[5] Heggy and Hall no doubt have or will file appropriate gift tax returns and pay the gift tax due on a transfer to a "stranger" donee under secs. 72.16 and 72.83, Stats. Whatever tax Heggy must pay is an additional loss to him.

home. He gave it to a companion of many years and continues to live in it. These are facts of record, however, and the trial court made no finding that the gift was sham, conditional or incomplete.

Weltys assert that the trial court should have added to Heggy's assets the value of his interest in a pension sharing plan. The trial court found that the value of Heggy's interest, if any, had not been proven. Since the record contains no evidence from which the trial court could have determined the value of Heggy's interest, the court did not err. If, as Weltys assert, Heggy refused to furnish information regarding the plan, it was for them to prove the value by other means.

Weltys assert that the trial court erred in deducting from Heggy's assets the unsatisfied judgment for compensatory damages plus interest. We find no error. Liabilities are deducted from assets to determine net worth. The judgment is a liability. No reason exists to treat it differently from any other liability.

Weltys argue that the court erred in deducting from Heggy's assets his unpaid attorney's fees amounting to $76,669 for services in this action. Heggy's unpaid attorney's fees are a liability and deductible. Weltys contend that a defendant might tell his attorney to run the bill as high as possible to avoid paying punitive damages. When that situation arises, we will deal with it. Allowance of attorney's fees is limited by the rule of reasonableness, and the reasonableness of Heggy's attorney's fees is not disputed on appeal.

The trial court found that Heggy has other current obligations of $39,500, including interest. The

factual basis for the finding is uncontested. Weltys contend that because Heggy borrowed $39,500 to support himself while his action and the appeal were pending, and to pay attorney's fees, that amount was improperly deducted from his assets. We have already discussed the deductibility of attorney's fees. A defendant against whom punitive damages are assessed has the right to support himself, and if he incurs liabilities for that purpose, they are properly deducted to arrive at net worth.

### 5. *Right to Defend*

Turning to Heggy's cross appeal, we reject his contention that the trial court should have allowed him to defend the retrial. Heggy argues that because he was partially successful on appeal and because we ordered a "retrial," he is entitled to defend at that retrial. We disagree. In the default proceeding, the trial court took evidence on Heggy's assets, and we directed retrial of that same matter and a redetermination of the punitive award, if necessary. We agree with the court's view on remand that the retrial was a continuation of the default proceeding.

### 6. *Jury on Retrial*

Heggy argues that the trial court should have granted his request for a jury. He relies on *Tesky v. Tesky,* 110 Wis. 2d 205, 327 N.W.2d 706 (1983). *Tesky* is not on point.

The issue in *Tesky* was "whether a plaintiff who waived a jury trial at the first trial is entitled as a matter of right to have his case be decided by a jury on retrial because a modification in the applicable law introduced a new, disputed question of fact into the case." *Id.* at 206, 327 N.W.2d at 706. The *Tesky* court held that such a plaintiff is entitled to a jury.

Heggy defaulted. He did not waive a jury trial. He waived any trial. No change in the law has occurred, and the same determinations had to be made at the retrial as the court attempted to make when granting the default judgment: namely, the extent of Heggy's wealth and the effect of that determination upon the punitive award.

Because the retrial was essentially a continuation of the default proceedings, the trial court correctly denied Heggy's request for a jury.

7. *Law of the Case*

We reject Heggy's last contention that no punitive damages whatever should have been awarded. The trial court initially awarded punitive damages, Heggy appealed and the propriety of a punitive award was not reversed. The trial court was directed only to reconsider the punitive damages award in light of Heggy's worth, not whether an award was warranted. *Welty I,* 124 Wis. 2d at 334, 369 N.W.2d at 771. The propriety of a punitive award is now the law of the case. Law of the case doctrine generally restrains a trial court from reconsidering an issue of law an appellate court has affirmed. *State v. Brady,* 130 Wis. 2d 443, 446–47, 388 N.W.2d 151, 153 (1986).

Law of the case doctrine does not prevent a trial court from retrying an issue if evidence on a subsequent trial is substantially different or if controlling authority has been modified. *Id.* at 448, 388 N.W.2d at 154. Neither of those circumstances exists here. The trial court did not abuse its discretion by refusing to reconsider the propriety of awarding punitive damages.

We conclude that the judgment must be affirmed.

*By the Court.*—Judgment affirmed. No costs to any party.