## David HEGGY, Plaintiff-Appellant,

### v.

## Edward E. GRUTZNER, Defendant-Respondent.

Court of Appeals

*No. 89–0111. Submitted on briefs September 11, 1989.—Decided March 15, 1990.*

(Also reported in 456 N.W.2d 845.)

For the plaintiff-appellant the cause was submitted on the briefs of *Frank X. Kinast* of Beloit.

For the defendant-respondent the cause was submitted on the briefs of *Bolgrien, Ruth, Rentz, Mineau & Koepke, S.C.,* by *Robert J. Ruth* of Beloit.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. David Heggy appeals from dismissal of his defamation action against Edward Grutzner. The issues are whether: (1) Grutzner was absolutely privileged to make a defamatory statement to a law enforcement officer; (2) the trial court properly

applied "issue preclusion" when it (a) precluded Heggy from contesting findings of fact in an earlier action which resulted in a default judgment against Heggy; (b) admitted in evidence a "finding" from the earlier action based in part on the trial judge's opinion; and (c) directed the jury to "believe" the findings in the earlier action; and (3) the court erroneously admitted hearsay evidence.

We conclude that Grutzner was not absolutely privileged. The court properly applied issue preclusion except as to the finding which included the trial judge's opinion. The court abused its discretion by its hearsay ruling. However, neither error affected Heggy's substantial rights. Therefore the errors do not require a new trial. We affirm the judgment.

## 1. BACKGROUND

Much of the history behind this appeal is found in *Welty v. Heggy,* 124 Wis. 2d 318, 369 N.W.2d 763 (Ct. App.), *cert. denied,* 474 U.S. 947 (1985) *(Welty I),* and *Welty v. Heggy,* 145 Wis. 2d 828, 429 N.W.2d 546 (Ct. App. 1988) *(Welty II).* Carl and Susan Welty were Heggy's neighbors. He tortiously harassed and caused them severe emotional distress and resulting bodily harm. Grutzner represented them in the tort action against Heggy reported in *Welty I* and *Welty II.* Heggy failed to answer or appear. The trial court heard testimony on Weltys' motion for a default judgment and made formal findings detailing Heggy's outrageous behavior over the years. The court found that Heggy's conduct was intentional, carefully planned, carefully executed, and "specifically done in order to cause severe emotional distress to each of the plaintiffs." On December 10, 1983, the trial court entered a default judgment

against Heggy, awarding $356,163.16 to Weltys, including $200,000 punitive damages.

On December 13, 1983, Grutzner wrote to the county sheriff. Grutzner said in his letter:

> At the trial, Judge Long received in evidence a "Christmas" gift mailed to the Weltys from David Heggy. Judge Long was so concerned that this box might contain a bomb that he had it opened by the Beloit Police Department Bomb Squad. There is no telling what this mad man might do. As you know, the Weltys are aged and rather defenseless. They need your protection.

The trial court denied Heggy's motion to set aside the default judgment against him. He appealed both the judgment and the order. We affirmed the order and the judgment in part but set aside the punitive damage award and remanded for further consideration of punitive damages. *Welty I,* 124 Wis. 2d at 334, 369 N.W.2d at 771-72. On remand, the trial court reduced the punitive damages award to $50,000 and entered judgment accordingly. Heggy again appealed and we affirmed. *Welty II,* 145 Wis. 2d at 840, 429 N.W.2d at 551.[1]

Before we released our mandate in Welty II, Heggy brought his defamation action. He claimed he was defamed by Grutzner's description of him as a "mad man" in the December 13, 1983 letter to the sheriff. Grutzner pleaded truth as a defense. The trial court applied the issue preclusion rule to the findings of fact in the default proceeding, admitted those findings in evidence at the defamation trial, and ruled that Heggy could present no evidence contesting the findings.

[1]The default action, the remand, and the defamation action were heard by different trial judges in Rock county circuit court.

During their deliberations and referring to the earlier findings from *Welty I* which had been put in evidence, the jury asked the trial court: "Are we to believe that the defendant, David Heggy, is the person responsible for committing the acts described in the document?" The court instructed the jury that they must so believe. The jury found that Grutzner's statement to the sheriff that Heggy was a "mad man" was substantially true, the court dismissed Heggy's complaint, and he appealed.

## 2. ABSOLUTE PRIVILEGE

Grutzner moved to dismiss Heggy's appeal on grounds that the "mad man" statement to the sheriff was absolutely privileged, not conditionally privileged as the trial court held. Grutzner contends that his absolute privilege mooted all other issues in this appeal. We deny his motion. In this state, defamatory statements to law enforcement officers are conditionally privileged. *Bergman v. Hupy,* 64 Wis. 2d 747, 751–52, 221 N.W.2d 898, 901 (1974).

## 3. ISSUE PRECLUSION

Issue preclusion is sometimes referred to as collateral estoppel. It prevents relitigation of an issue of fact or law previously determined by a valid final judgment in an action between the same parties. *Kichefski v. American Fam. Mut. Ins.,* 132 Wis. 2d 74, 78, 390 N.W.2d 76, 78 (Ct. App. 1986). Whether issue preclusion applies is a question of law which we decide without deference to the trial court's view. *In Interest of T.M.S.,* 152 Wis. 2d 345, 354, 448 N.W.2d 282, 286 (Ct. App. 1989).

Grutzner was not a party to the earlier litigation between Heggy and Weltys. Grutzner may, however, benefit from issue preclusion in his defense to Heggy's defamation action. Issue preclusion may be "asserted defensively to prevent a party from relitigating an issue which has been conclusively resolved against that party in a prior case" to which the party asserting preclusion was not a party. *Crowall v. Heritage Mut. Ins. Co.,* 118 Wis. 2d 120, 125, 346 N.W.2d 327, 330 (Ct. App. 1984).

The principal question concerning issue preclusion is whether it can be applied to prevent Heggy from contradicting facts on which the default judgment was based. Heggy argues that issue preclusion should never apply to findings supporting default judgments, since the factual issues in default proceedings are not fully litigated.

According to *Restatement (Second) of Judgments* sec. 27 comment e, at 257 (1980): "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, [the issue preclusion rule] does not apply with respect to any issue in a subsequent action." But that exception is flexible: "[E]ven if [an issue] was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate." *Id.* at 256. The policy considerations underlying issue preclusion depend largely on such reasons.

> There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of

193

conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

*Id.*

No policy concern favoring the default judgment exception to the issue preclusion rule applies here. Heggy asserts no reason for his failure to litigate the issues which resulted in the default judgment against him. On the contrary, he evaded opportunities to litigate. In *Welty I,* we affirmed the trial court's finding that Heggy had intentionally evaded service of process. 124 Wis. 2d at 328, 369 N.W.2d at 769. We described him as a process dodger. *Id.* He had actual notice of the action but purposely avoided service. *Id.* at 329, 369 N.W.2d at 769.

Only after the default judgment was entered did Heggy appear. He then moved to set aside the default judgment on various grounds including improper admission of evidence. *Id.* at 330, 369 N.W.2d at 769. The trial court denied Heggy's motion on grounds that he had been "neglectful, careless and inattentive in this matter" and had not shown he had "exercised a reasonable degree of prudence." *Id.,* 369 N.W.2d at 769–70. We held that the court did not abuse its discretion in denying the motion. *Id.* at 334, 369 N.W.2d at 771. To allow him in his defamation action to relitigate the facts found in *Welty I* would grant him part of the relief he sought and was justly denied in *Welty I.*

Heggy argues that issue preclusion applies only to findings of "ultimate issues of fact."[2] That is not the test. "An issue on which relitigation is foreclosed may be one of evidentiary fact, of 'ultimate fact' (i.e., the application of law to fact), or of law." *Restatement (Second) of Judgments* sec. 27 comment c, at 253 (1980). The issue of fact need only have been "essential to the judgment." *T.M.S.*, 152 Wis. 2d at 354, 448 N.W.2d at 286. Heggy fails to identify any fact he was precluded from litigating which was not essential to the judgment, except Finding 31 which we next discuss.

### 4. FINDING 31

Heggy specifically faults the trial court for admitting in evidence by way of issue preclusion Finding 31 in *Welty I.* He refers to it as "an expression of the trial judge's personal opinion." Finding 31 reads as follows:

> I will say for the record that in the view of this court I have practiced law for thirty-one years and now I have been a judge for four years, I have not seen any conduct in the opinion of the court more extreme and more outrageous directed to peace-loving, fine people in a manner specifically calculated not only to destroy the property rights of the plaintiffs but to destroy the very lives and existence of the plaintiffs.

[2]Heggy relies in part on a broad statement in *State ex rel. Flowers v. H&SS Department,* 81 Wis. 2d 376, 387, 260 N.W.2d 727, 734 (1978), that "[c]ollateral estoppel precludes relitigation of an issue of ultimate fact previously determined by a valid final judgment." Whether issue preclusion applies to evidentiary facts was not before the *Flowers* court.

■

The trial court erred by using issue preclusion to admit Finding 31 in evidence. Issue preclusion applies to findings of fact and conclusions of law. *Restatement (Second) of Judgments* sec. 27 (1980). Finding 31 includes the trial court's opinion.[3] No attempt was made at trial to delete the opinion and admit the balance.

■

The error, while based on law, was evidentiary. Evidentiary error does not necessarily require reversal. We may not reverse or order a new trial on the ground of improper admission of evidence unless the error has affected substantial rights of the party seeking relief on appeal. Sec. 805.18(2), Stats.

■

When applying sec. 805.18(2), Stats., we use a harmless error test. Within a year of its adoption, the statute was declared to require a reversal only if, had the error not occurred, "the result, as to [appellant], might, within reasonable probabilities, have been more favorable." *Oborn v. State,* 143 Wis. 249, 280, 126 N.W. 737, 749 (1910).[4] The test is often repeated in modified form in both civil and criminal cases without referring to sec. 805.18(2). *See, e.g., Jax v. Jax,* 73 Wis. 2d 572, 582, 243 N.W.2d 831, 837 (1976) ("probably would have been a different result"); *State v. Horenberger,* 119 Wis. 2d

---

[3]That part of Finding 31 regarding Heggy's intent is factual. Whether his conduct was outrageous is a question of law. *Doersching v. Funeral Directors,* 138 Wis. 2d 312, 325, 405 N.W.2d 781, 787 (Ct. App. 1987). The conclusion that Heggy's conduct was outrageous was necessary to assess punitive damages. *Brown v. Maxey,* 124 Wis. 2d 426, 431, 369 N.W.2d 677, 680 (1985).

[4]What was then sec. 3072m, Stats. 1911, was later sec. 817.37, Stats. 1975, and is now sec. 805.18(2), Stats., was created by sec. 1, ch. 192, Laws of 1909.

237, 245, 349 N.W.2d 692, 696 (1984) ("might probably have been more favorable").[5]

Regardless how the harmless error test should be stated in a sec. 805.18(2), Stats., analysis, we cannot err if we apply the formulation in *State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222, 232 (1985): no "reasonable possibility that the error contributed" to the final result. We apply that test to the error viewed against its background, the other findings of fact from *Welty I* which the jurors had before them. Given that background, no reasonable possibility exists that the evidentiary error as to Finding 31 contributed to the verdict that the description of Heggy as a "mad man" was substantially true.

The background findings of fact from *Welty I* which the jurors had before them are as follows: Carl Welty was a retired college professor, an ornithologist, an author, and 82 years old. Susan Welty was a retired college professor, a teacher, an author, and 78 years old. Without provocation by them, Heggy harassed and intentionally caused severe emotional distress and resultant bodily harm to Weltys over a three-year period. He pointed what appeared to be a gun at Carl Welty, shot a bullet through Weltys' bedroom window, and pointed a broom handle at Carl and shouted "bang." He destroyed many of Weltys' trees, shrubs, flowers, and grasses by fire and herbicides. He hung a toilet seat from a tree so that it displayed toward Weltys' property. He made obscene and nuisance phone calls to them at all hours of the night, played excessively loud music, used a device to emit a high-pitched sound, yelled at them, operated a strobe light at night, mowed his lawn at night, and silently stared at Carl Welty from the fence dividing the properties. He caused over 1,400 pieces of unwanted mail

---

[5]Neither the *Jax* court nor the *Horenberger* court nor the cases each relies on cite sec. 805.18(2), Stats.

to be sent to Weltys, put nails in their driveway, sharp objects under the tires of their car, and iron rods in the ground to damage their lawn mower. His conduct was not only intentional but "carefully planned," "carefully executed," and "specifically done in order to cause severe emotional distress to each of the plaintiffs."

The jury was instructed that a "mad man" "acts as if insane," and "mad" means "silly, akin to foolish or crazy; disordered with mind, completely unrestrained by reason and judgment; senseless; incapable of being explained or accounted for; carried away by intense anger; furious; marked by intense and often chaotic activity; wild." In view of those instructions and the other findings of fact from *Welty I* which were in evidence, no reasonable possibility exists that without Finding 31 the jury would have found the statement that Heggy was a "mad man" was not substantially true. Because the error in admitting Finding 31 did not affect Heggy's substantial rights, sec. 805.18(2), Stats., prohibits us from reversing the judgment on the basis of the error.

### 5. JURY TO "BELIEVE" FINDINGS

Heggy correctly claims that when it answered their question the trial court took away the jury's right to weigh the credibility of the evidence. But no error occurred. The jury had no right to weigh the evidence. A previous fact-finder, the trial court in *Welty I,* had already done so. That the fact-finder was a jury in Heggy's defamation trial is immaterial. "The determination of an issue by a judge in a proceeding conducted without a jury is conclusive in a subsequent action whether or not there would have been a right to a jury in that subsequent action if collateral estoppel did not

apply." *Restatement (Second) of Judgments* sec. 27 comment d (1980).

The court properly directed the jurors to "believe" that Heggy had committed the acts set forth in the prior findings of fact.

### 6. HEARSAY TESTIMONY

Carl Welty died before the defamation trial. At the trial, Heggy called an officer from the sheriff's department who testified that in 1985 he tried to set up a reconciliation meeting in 1985 between Heggy and Weltys. Why the meeting was never held became an issue. On cross-examination, the officer testified to his conversations with Weltys and to their statements that they feared Heggy. The officer related Carl Welty's description of incidents of bizarre conduct by Heggy not covered by the findings of fact in *Welty I.*[6] Heggy did not timely object to the questions or answers regarding Mrs. Welty's fears. He timely objected on hearsay grounds to the testimony by the officer concerning Carl Welty's fears of Heggy.

Having failed to timely object to the testimony of the officer with respect to the fears of Mrs. Welty, Heggy lost the right to appellate review of that issue. Sec. 901.03(1), Stats.

The trial court allowed the officer to relate Carl Welty's expression of fears. The court reasoned that trustworthiness attended the evidence and that it was

---

[6]The officer testified that Carl Welty told him that Heggy was capable of shooting someone, had taken to drinking lately, and was a greater threat when he had been drinking. Carl was afraid to mow grass by the creek because the last time he did so, Heggy shot at him.

admissible as background to testimony regarding the mediation meeting. For trustworthiness, the court relied on the fact that in 1985 the officer wrote a report which covered his conversation with the Weltys. He had the report at the trial.

We will sustain an evidentiary ruling on the admissibility of hearsay unless the ruling was an abuse of discretion. *Badger Produce v. Prelude Foods,* 130 Wis. 2d 230, 235, 387 N.W.2d 98, 101 (Ct. App. 1986). We conclude that because the trial court misapplied secs. 908.03(24) and 908.045(6), Stats., it erred.

A statement by an unavailable declarant is admissible in evidence if the statement, like other exceptions to the hearsay rule, has circumstantial guarantees of trustworthiness. Secs. 908.03(24) and 908.045(6), Stats. We need not decide whether circumstantial guarantees of trustworthiness attended the officer's recollection of Carl Welty's statements to him. That is not enough to admit the officer's testimony as to Carl Welty's statements that he feared Heggy. Grutzner wanted that statement in evidence to show that Carl Welty in fact feared Heggy, not merely that the officer heard Welty say so, and it is the trustworthiness of Welty's statement to the officer that is critical.

No circumstantial guaranty of trustworthiness attends Carl Welty's statement to the officer. *Cf. Boyer v. State,* 91 Wis. 2d 647, 664–65, 284 N.W.2d 30, 36–37 (1979); *Wilder v. Classified Risk Ins. Co.,* 47 Wis. 2d 286, 288–90, 177 N.W.2d 109, 112–13 (1970) (statements by witnesses to police officer included in officer's investigative report inadmissible hearsay even if report itself is admissible as official record). Admission of hearsay for "background" purposes does not satisfy secs. 908.03(24)

and 908.045(6), Stats., which require trustworthiness comparable to established hearsay exceptions.

While it was error to admit the officer's testimony regarding Heggy's fears, the error was harmless under the *Dyess* formulation. The question before the jury was whether Grutzner's statement that Heggy was a mad man was substantially true. Whether Carl Welty feared Heggy was irrelevant to that issue. The particular incidents described to the officer are, in sum, no more shocking than the dozens of incidents described in the findings of fact. We are satisfied that had the error not occurred, the jury's answer would not have been different.

*By the Court.*—Judgment affirmed.