The PORTAGE COUNTY BANK, Plaintiff-
Respondent,

v.

James C. DEIST, and Jo Ann E. Deist, Defendants-
Appellants.

Court of Appeals

*No. 89-2266. Submitted on briefs June 7, 1990.—Decided
December 20, 1990.*

(Also reported in 464 N.W.2d 856.)

793

For the defendants-appellants the cause was submitted on the briefs of *James M. Siehr,* of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *Anderson, Shannon, O'Brien, Rice & Bertz,* by *Robert F. Konkol,* of Stevens Point.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J.   James and Jo Ann Deist appeal from a judgment in favor of M&I Bank of Portage County foreclosing their interests in their home. The foreclosure arises out of the Deists' guarantees to the bank on its loans to Deist Forest Products, Inc. After

Forest Products defaulted on the loans, it sought protection under chapter 11 of the Bankruptcy Code and proposed a reorganization plan.

The dispositive issues are whether: (1) the bank is precluded from asserting a deficiency against the Deists because the bankruptcy court found that the property transferred to the bank under the confirmed plan was the "indubitable equivalent" of its second claim against Forest Products; and (2) the Deists may assert that the bank's sales of the property transferred to it were commercially unreasonable and made with no notice to them. We conclude that the bank is not precluded from asserting a deficiency against the Deists, and the Deists' guarantees of payment are absolute. We therefore affirm the judgment.

The reorganization plan proposed in relevant part: "The debtor shall transfer to the claims [of a class into which the bank's secured claims fall] property of a value equal to the amount of such claims existing on the date of the filing of the petition for relief herein, as allowed by the Court, in full satisfaction of said claims." The bank objected to the reorganization plan but the bankruptcy court "crammed down" the plan under 11 U.S.C. sec. 1129. "Cram down" refers to the power of the bankruptcy court under sec. 1129(b)(1) to approve a reorganization plan at the request of the proponent even if the creditors object. Under a "cram down," the court must affirm the plan if it is "fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. sec. 1129(b)(1). To be fair and equitable as to the holders of secured claims, such as the bank, the plan must provide "for the realization by such holders of the indubitable

equivalent of such claims." 11 U.S.C. sec. 1129(b)(2)(A)(iii).

As part of the cram down proceedings, the bankruptcy court found that when the chapter 11 petition was filed, the bank's claim totaled about $298,351 and that it was entitled to interest on that amount to the time of transfer. The court valued Forest Products' real property at $168,500 and found that the "indubitable" value of its personal property was 66% of its current appraised value. The court approved the plan and ordered that Forest Products transfer to the bank "such items of its personal and real property as, using the valuation set forth above, equals the bank's claim plus the interest charges . . .." The Deists' guarantees are not mentioned in the reorganization plan or the cram down order.

After the bank sold the property transferred to it, Forest Products applied to the bankruptcy court to redetermine its debt to the bank. Observing it was "necessary once and for all to bring the case to a final conclusion," the court redetermined the debt and concluded, on the basis of the valuations in the cram down, that the transfer resulted in an "overpayment" of $8,054 to the bank.[1] The bankruptcy court gave Forest Products judgment for that amount against the bank.

The bank then began the foreclosure action against the Deists in state court. Forest Products applied to the bankruptcy court for an injunction to prevent the bank from proceeding with foreclosure. The court denied the request. The court relied on 11 U.S.C. sec. 524(e) which provides: "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect

---

[1] "Overpayment" resulted because of the difference between the value of the property received and the redetermined debt. No cash was paid to the bank.

the liability of any other entity on, or the property of any other entity for, such debt." The court cited three cases decided before sec. 524(e) was adopted.[2]

The bankruptcy court held that although it had given Forest Products credit for property transferred to the bank and ordered that the debt be fully discharged, "[b]oth the Bankruptcy Code and caselaw overwhelmingly support the conclusion that the bankruptcy court did not and cannot relieve the personal guarantors from their liability on their guarantees. Nothing, therefore, precludes [the bank] from pursuing collection of their deficiency against the Deists."

Forest Products unsuccessfully appealed that decision to the United States District Court. The district court held on the basis of sec. 524(e) that the bankruptcy court could not extinguish liability of a guarantor who was not a party to the bankruptcy. The district court then discussed "the more delicate problem" whether a creditor may be estopped from asserting a deficiency claim against a guarantor after the creditor received what had been determined to be the "indubitable equivalent" of its claim against the principal.

---

[2]*Union Carbide Corp. v. Newboles,* 686 F.2d 593 (7th Cir. 1982) (bankruptcy court has no power to discharge liabilities to bankrupt's guarantor); *R.I.D.C. Indus. Development Fund v. Snyder,* 539 F.2d 487, 494 (5th Cir. 1976) *cert. denied* 429 U.S. 1095 (1977) (creditor's approval of ch. 11 bankruptcy plan purporting to eliminate underlying debt did not prevent creditor from recourse against guarantors); and *United States v. Beardslee,* 562 F.2d 1016 (6th Cir. 1977) *cert. denied* 439 U.S. 833 (1979) (action against guarantor upheld even when pursuant to approved plan in ch. 11 proceedings to secured creditor gave bankrupt debtor document stating that mortgage was fully paid, discharged and satisfied).

The district court found no basis for the estoppel. The court held that:

> [A]pplying the rationale of sec. 524(e), in the spirit of *Newboles,* despite the appearance of a complete satisfaction of the debt owed to [the bank] . . . by virtue of its receipt of the indubitable equivalent of its claim in property valued by the bankruptcy court, there is no basis for granting the requested injunction barring [the bank's] proceedings against [the Deists]. Estoppel cannot attach merely because of a suggestive term used in administering federal bankruptcy law.

Still frustrated in its search for an injunction against the bank's foreclosure action, Forest Products appealed to the United States Court of Appeals. That court held that no case or controversy existed between Forest Products and the bank, since Forest Products had been released from liability on its debt to the bank and wanted a decree to benefit only the Deists. *In re Deist Forest Products,* 850 F.2d 340, (7th Cir. 1988). For that reason, the court of appeals vacated the judgment of the district court.

Upon their return to the circuit court in which the foreclosure was pending, that court rejected the arguments Deists made to the bankruptcy court and the federal district court. It entered a judgment against the Deists for $30,739 principal plus $19,663 interest and $10,892 attorney's fees, costs and disbursements which had accumulated, for a total of $61,295. The amount of the judgment is unchallenged.

In this appeal, Deists continue to assert that the bank is estopped from seeking the deficiency from them. They use the term "estoppel by record," a usage consistent with some older cases such as *Kuchenreuther v. Chicago, M., St. P.&P. R.R.,* 225 Wis. 613, 275 N.W. 457 (1937). We follow the usage in *Restatement (Second) of*

*Judgments* sec. 27 (1980), which states: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." This rule, known as "issue preclusion," subsumes the concepts of direct and collateral estoppel, *Restatement (Second) of Judgments* sec. 27 & comment b, and is included in the concept "res judicata." *In re T.M.S.*, 152 Wis. 2d 345, 350 n.5, 448 N.W.2d 282, 284 (Ct. App. 1989).[3]

Issue preclusion may be raised defensively by one who is not a party to the original proceedings. *Heggy v. Grutzner,* 156 Wis. 2d 186, 193, 456 N.W.2d 845, 848 (Ct. App. 1990); *Restatement (Second) of Judgments* sec. 29 (1980). Consequently, it is immaterial that Deists were not parties to the bankruptcy proceeding.

Issue preclusion analysis requires us to identify the issue decided in the prior proceeding and to compare it with the allegedly precluded issue. *See Restatement (Second) of Judgments,* sec. 27 comment c (necessary "to delineate the issue on which litigation is, or is not, foreclosed by the prior judgment").

The issues in the bankruptcy reorganization proceeding and cram down and in the foreclosure action are not identical. The issue in the reorganization proceeding was whether the bank's secured claims could be "satis-

---

[3]To the extent the Deists' brief suggests an equitable estoppel argument, we reject it. The Deists were not parties to the bankruptcy proceeding, and could not have reasonably relied on the bank's "acceptance" of the cram down. Furthermore, if Forest Products had proposed that the bankruptcy court discharge the Deist's guarantee, the court would have been obliged to reject the idea, as we discuss below.

799

fied" for purposes of that proceeding by transferring property to the bank equal to its claims. The issue in the cram down was whether, for purposes of that proceeding, the property to be transferred equaled the bank's secured claims. The bankruptcy court affirmatively answered both questions and the transfer was made. The issue in the foreclosure action is whether Deists' guarantees remain effective even though the bank's claims were satisfied in and for purposes of the reorganization proceeding.

The issues in the reorganization proceeding, including the cram down, had nothing to do with the Deists' guarantees. The effect of those proceedings on the guarantees was not litigated. Such litigation was not only unnecessary but futile, since those proceedings could not have affected the guarantees. Federal courts have generally interpreted 11 U.S.C. sec. 524(e) to preclude release of guarantors by a bankruptcy court. *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1050 (5th Cir. 1987). Thus, had Forest Products proposed that its plan of reorganization would bar a future action against the Deists upon their guarantees, the bankruptcy court would have had to deny confirmation of the plan. *In re Sandy Ridge Development Corp.,* 881 F.2d 1346, 1350–51 (5th Cir. 1989); *In re Thornebrook Development Corp.,* 96 Bankr. 350, 351 (Bankr. N.D. Fla. 1989). Consequently, to preclude the bank from contending in the foreclosure action that the Deists remain liable on their guarantees would give them a benefit from the reorganization proceedings not permitted in those very proceedings.

Deists next argue that the bank's sales of the Forest Products property transferred to it in the reorganization proceedings were commercially unreasonable and with-

out notice to the Deists, contrary to sec. 409.504(3), Stats.[4] The provisions of that statute affect only the sales of the personal property the bank received, not the real property. Section 409.104(10), Stats. We therefore confine the balance of our discussion to the personal property sales.

Deists may not attack the sufficiency of the sales of the personal property. They are guarantors of payment, not of collection. The guarantee given and signed by Deists provided: "The undersigned, JAMES C. DEIST and JO ANN E. DEIST, husband and wife, do jointly and severally guarantee *payment* of two notes when due in the face amount of $130,000.00 and $95,000.00, executed this date by the officers of DEIST FOREST PRODUCTS, INC." (Emphasis added.)

That guarantee is "an absolute guaranty of payment and is not subject to the defense that the creditor impaired the collateral," absent bad faith on the creditor's part. *Crown Life Ins. Co. v. LaBonte,* 111 Wis. 2d 26, 43–44, 330 N.W.2d 201, 209 (1983).

> "Guaranties of payment 'are absolute, not collateral promises . . .. Unlike the contract of an indorser, there is no condition as to demand and notice of

---

[4]Section 409.504(3), Stats., provides in relevant part:

Disposition of the collateral may be by public or private proceedings . . .. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he is not signed after default a statement renouncing or modifying his right to notification of sale . . ..

default annexed to a contract of guaranty of payment or of performance.' " *Estate of Menzner,* 189 Wis. 340, 341, 207 N.W. 703 (1926). Nor is it any defense for a guarantor of payment as distinguished from a guarantor of collection that the creditor "through negligence, or lack of due diligence, lost or dissipated the collateral furnished by the debtor." *United States v. Klebe Tool & Die Co.,* 5 Wis. 2d 392, 397, 92 N.W.2d 868[, 871] (1958).

*Bank of Sun Prairie v. Opstein,* 86 Wis. 2d 669, 678, 273 N.W.2d 279, 283 (1979).

Deists have not pleaded bad faith by the bank. Because they guaranteed payment, they may not attack the sufficiency of the bank's procedures in selling the property it received from Forest Products.

*By the Court.*—Judgment affirmed.