SUPREME JUDICIAL COURT 
 
 GINA M. FERRINI, as Personal Representative of the Estate of PETER F. MONSINI, Plaintiff v. HYM INVESTMENT, GROUP, LLC, BULFINCH UNIT A OWNER, LLC, GZA GEOENVIRONMENTAL, INC., Defendants AND

 
 Docket:
 2284CV01656-C
 
 
 Dates:
 March 26, 2025
 
 
 Present:
 Robert B. Gordon
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT GZA GEOENVIRONMENTAL, INC.'S MOTION FOR PROTECTIVE ORDER
 
 

             'This action arises from the death of Peter F. Monsini on March 26, 2022, which occurred as the result of a structural collapse during the demolition of the Government Center Parking Garage in Boston. On November 18, 2024, Plaintiff, as representative of the decedent's estate, served a Notice of Deposition to Defendant GZA GeoEnvironmental, Inc. ("GZA"). The deposition notice requested testimony and documents pursuant to Mass R. Civ. P. 30(b)(6) as to GZA's financial history and its insurance coverage for the claims asserted in this action. Before the Court is GZA's Motion for Protective Order, by which it seeks to quash Plaintiff's deposition notice. For the reasons which follow, GZA's Motion shall be ALLOWED IN PART and
 
                                                            -1-
 
DENIED IN PART.
DISCUSSION
I. STANDARD OF REVIEW
            In general, a party may obtain discovery regarding any non-privileged matter "which is relevant to the subject matter involved in the pending action . . . "Mass. R. Civ. P. 26(b)(l). The information sought need not be admissible at trial; for it is discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." Id. However, upon a showing of good cause, the Court may issue a protective order directing that the discovery not be had or setting the terms, conditions, scope and/or method by which the requested discovery may be obtained, in order ''to protect a party ... from annoyance, embarrassment, oppression, or undue burden or expense[.]" Mass. R. Civ. P. 26(c). "[T]he party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Trustees, Woodbury Heights Condo. Trust v. Magill, No. WOCV02-01027, 2006 WL 1075588, at *2 (Mass. Super. Ct. Mar. 23, 2006) (Agnes, J.); G & F Indus., Inc. v. Jeffco, Inc., No. WOCV04- 0581A, 2006 WL 306893, at *3 (Mass. Super. Ct. Feb. 2, 2006) (Agnes, J.).
II. GZA's FINANCIAL INFORMATION
            Plaintiffs Notice of Deposition requests, inter alia, testimony of a GZA designee and all documents:
·"pertaining to and showing [GZA's] assets available to cover damages [which might be] awarded against [GZA] ... including banking and credit accounts, cash, real estate and capital holdings; cash flow, revenues, tax returns, equity and debt, payroll, and operating expenses and accounts; payments to and received relative to the Government Center Garage project, as well as accounting procedures for the years from 2010 to the present for [GZA] and any related companies."
(Pl.'s Notice of Depo., Schedule B, ¶ 7. Accord Schedule A, ,i,i7-8.) Plaintiff maintains that the
 
                                                            -2-
 
requested information is relevant to her request for punitive damages and thus discoverable. GZA counters that Plaintiff may only seek discovery into its financial status and the ability to pay a damages award after Plaintiff has obtained a verdict against GZA, via post-judgment discovery conducted in accordance with Mass. R. Civ. P. 69. The Court agrees with Plaintiff in part. Information concerning GZA's present financial status is relevant to her claim for punitive damages.[1] However, Plaintiffs request that GZA produce essentially every financial record reflecting or even potentially related to its net worth over a fifteen year period, as well a Rule 30(b)(6) designee to testify to the same, vastly exceeds the scope of reasonable discovery.
            While compensatory damages "are intended to redress the concrete loss," punitive damages are aimed at deterrence, condemnation, and retribution. Aleo v. SLB Toys USA, Inc., 466 Mass. 398,412 (2013), quoting State Farm Mut. Auto. Ins. Co. v. Campbell. 538 U.S. 408, 416 (2003). See also Clifton v. Massachusetts Bay Transp. Auth.• 445 Mass. 611, 624 (2005) ("A proper punitive damage award ... would be a sufficient amount to send a clear message to [the defendant] of condemnation for its reprehensible behavior and of warning that it must put an end to any legacy of [such behavior]."); Dartt v. Browning-Ferris Indus., Inc. (Mass.). 427 Mass. 1, 17 (1998) ("[P]unitive damages are appropriate where a defendant's conduct warrants condemnation and deterrence." [quotation omitted]). Under Massachusetts law, punitive damages are available only where authorized by statute. Aleo, 466 Mass. at 412. In the case at bar, Plaintiff seeks punitive damages under the Commonwealth's wrongful death statute, which permits such an award where a decedent's death was caused by the "malicious, willful, wanton
 
--------------------------------------------
 
[1] See Katz v. Liberty Power Corp., LLC, No. 18-CV-10506-ADB, 2020 WL 3492469. at *5 (D. Mass. June 26, 2020) (although courts "[g]enerally ...  do not allow prejudgment discovery regarding a defendant's ability to satisfy a judgment ... [w]hen plaintiffs seek punitive damages, however, a majority of federal courts permit pretrial discovery of financial information about the defendant without requiring plaintiff to establish a prima facie case on the issue of punitive damages.").
 
                                                            -3-
 
or reckless conduct ... or by the gross negligence of the defendant." G.L. c. 229, § 2. The wrongful death statute does not cap or otherwise limit punitive damages. See id. Compare G.L. c. 93A, §§ 9, 11 (proscribing punitive damages as double or treble compensatory damages). Where, as here, the upper limit of a punitive damages award is unbounded-except by the constitutional strictures of due process, see BMW of N. Am., Inc. v. Gore, 517 U.S. 559,562 (1996)-the defendant's financial position is a relevant factor in determining an appropriate award to condemn and deter its reprehensible conduct. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 22 (1991); Labonte v. Hutchins & Wheeler. 424 Mass. 813,827 (1997); Charles v. Leo, 96 Mass. App. Ct. 326, 351 (2019).[2] Consideration of a defendant's financial circumstances likewise serves the interests of justice by promoting awards that are meaningful but not crippling or excessive. Labonte, 424 Mass. at 826 (amount must be "reasonable and not simply a criminal
penalty"); Bain v. Springfield, 424 Mass. 758, 769 (1997) ("[A]ward of punitive damages cannot be left to the unguided discretion of the jury").
            Inasmuch as GZA's current net worth and financial condition is relevant to Plaintiffs claim for punitive damages, information regarding the same is generally discoverable. See Mass.
 
R. Civ. P. 26(c). Numerous courts have so held. See, e..,g,_, Katz, 2020 WL 3492469, at *5-6 (information concerning defendant's "current net worth" and "ability to pay" potential punitive
damages judgment relevant and discoverable); Boniface v. Viliena, No. 17-cv-10477, [ECF No.
 
--------------------------------------------
 
[2] See also Spagnuolo v. Holzberg, 98 Mass. App. Ct. 661, 668 (2020)(noting trial court's instructions that jury consider "defendant's wealth ... to determine what amount of money is needed to punish [ l defendant's conduct and to deter [] future acts"); Charles, 96 Mass. App. Ct. at 346-47 (2019) (same); Love v. Lord Nathan Rest Home, Inc., No. CV 06-30021-MAP, 2007 WL 9799830, at *l (D. Mass. Apr. 3, 2007) (defendant's financial information relevant to issue of punitive damages); Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 284 (C.D. Cal. 1998) ("[T]here is no dispute that information concerning the []defendants' finances is relevant regarding the issue of punitive damages.").Compare CardiAO Valve Techs., Inc. v. Neovasc Inc., No. 14-CV-12405-ADB, 2016 WL 8203206, at *2 (D. Mass. Apr. 25, 2016) (holding evidence of defendant's financial status inadmissible where G.L.c. 93A limited plaintiff's punitive award to double or treble damages).
 
                                                            -4-
 
107] (D. Mass. Apr. 1, 2020) (allowing interrogatory that sought identity of "real property, bank accounts, trusts, or other assets in which [party] had a legal or beneficial interest" where plaintiff
sought punitive damages); CEH, Inc. v. FV Seafarer, 153 F.R.D. 491, 498 (D.R.I. 1994) (non- spurious claim for punitive damages entitled plaintiff to discovery of defendants' financial information); St. Joseph Hosp. v. INA Underwriters Ins. Co., 117 F.R.D. 24, 25-26 (D. Me. 1987) (defendant's financial statements and disclosures of income to government entities were relevant to punitive damages and thus discoverable); Vollert v. Summa Corp., 389 F. Supp. 1348, 1349 (D. Haw. 1975) (permitting interrogatories as to defendant's current net worth and net income in four previous years in action for punitive damages). [3] [4]
            That being said, Plaintiffs requests concerning GZA's present and historical financial condition go well beyond matters relevant to this case. Plaintiff thus seeks information from
 
--------------------------------------------
 
[3] Some courts in sister jurisdictions have gone so far as to hold that a plaintiff must present affirmative evidence of a defendant's net worth, and thus proof of its ability to pay, to recover punitive damages. See Jonathan Woodner Co. v. Breeden, 665 A.2d 929,941 (D.C. 1995), opinion amended on denial of reh'g, 681 A.2d 1097 (D.C. 1996); Snow v. Capitol Terrace, Inc., 602  A.2d  121,127  n.8 (D.C. 1992);  Dumas v.  Stocker.  262  Cal. Rptr.  311,315  (Cal. App., 4th Dist. 1989); Welty v. Heggy 429 N.W.2d 546, 549 (Wisc. Ct. App. 1988). Cf.  Spagnuolo,  98  Mass. App. Ct.  at 669 (defendant waived  argument  that  insufficient  evidence  of  its  wealth  precluded  punitive  damages  award by failing to raise it before trial court).  But Homey  v.  Westfield  Gage  Co.,  77  F.  App'x  24, 34 (1st  Cir. 2003) ('Under Federal law, the burden of showing net  worth  is  placed  on  the defendant."),  citing  Provost v.  City of Newburgh 262 F.3d 146, 163 (2d  Cir.  2001) (burden  on  defendant  to  show  evidence  of  financial  condition warranting a limitation in a punitive  damages  award).  Burdens  of  proof  notwithstanding,  the  caselaw  appears virtually unanimous that a defendant's current net worth is  relevant  where  punitive damages  are  not  capped.  Haslip. 499 U.S. l, I8 (1991) ("[U]nlimited jury discretion ... may invite extreme results that  jar one's constitutional sensibilities"); Jonathan Woodner Co., 665 A.2d at 941 (D.C. 1995) ("Because the purpose of punitive damages is to punish a tortfeasor and deter future conduct,  the  amount  ...  should  be  enough  to  inflict  punishment,  while not  so great as to ...  lead to  bankruptcy."); Vollert,  389  F.  Supp. at  1352 ('[I]f a  complete financial  picture  is  not  given to the jury, defendant might well be prejudiced by the resulting speculation."); Wynn Oil Co. v. Purolator Chem. Corp., 403 F. Supp. 226, 232 (M.D. Fla. 1974) ("award of punitive damages should only hurt but not bankrupt a defendant").
[4] It bears note that the Massachusetts standard regarding the relevance of discovery is broader than under the Federal Rules of Civil Procedure, as amended in 2015. See Fed. R. Civ. P. 26(b)(l) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...."). Accord 49 Mass. Prac., Discovery§ 3:1 (Aug. 2024). As such, state court litigants seeking punitive damages are entitled to an equal or greater scope of discovery than that permitted in recent federal court decisions. See Smaland Beach Ass'n, Inc. v. Genova, 461 Mass. 214,228 (2012) ("Because the Massachusetts Rules of Civil Procedure are patterned after the Federal rules, we interpret our rules consistently with the construction given their Federal counterparts ... absent compelling reasons to the contrary or significant differences in content." [alterations in original]), quoting Strom v. American Honda Motor Co., 423 Mass. 330,335 (1996).
 
                                                            -5-
 
2010 to the present; but records reflecting GZA's finances five, ten, or fifteen years ago are simply not germane to this defendant's current net worth nor present ability to pay a punitive damages award. See Merrifield v. Gussman, 296 F. Supp. 3d 362,365 n.3 (D. Mass. 2017) (instructing jury not to consider defendant's historic records in determining punitive damages); Jonathan Woodner Co., 665 A.2d at 940 ("[N]et worth ... is an indicia of the appropriate amount of punitive damages because it is a measure of the current wealth or the current financial situation of a defendant[.]"); Welty. 429 N.W.2d at 549 (any measure of net worth other than "difference between the value of the defendant's assets and liabilities" at a time reasonably close to trial is "illusory"). Further, requiring the Defendant to produce every record that might theoretically evidence some scrap of financial information over this extended period provides, at most, de minimis insight into GZA's present wealth and cannot be countenanced. Plaintiff thus requests GZA's bank, credit and operating account statements, as well as its payroll and cashflow records, without any reference to the interval and/or frequency of such information. The Court has no difficultly concluding that the burden upon GZA to produce records and provide testimony regarding weekly or even monthly business debits and credits would substantially outweigh any benefit of such materials as concerns the issue of punitive damages. See Mass. R. Civ. P. 26(c)(3). See also Katz, 2020 WL 3492469, at *5-6 (denying request that defendant produce "monthly statements for all depository accounts" and instead, ordering parties to meet and confer so that defendants "may provide an honest and accurate representation of their current net worth in the least intrusive means available"). Where GZA's gross and net revenues, assets and liabilities are likely reflected in annual or year-end reports, the production of every account, payroll and cash flow record would likewise be unreasonably cumulative and duplicative. See Mass. R. Civ. P. 26(c)(2). Lastly, Plaintiff has failed to demonstrate legitimate
 
                                                            -6-
 
grounds to obtain GZA's tax returns. State tax returns are absolutely privileged from discovery, except in circumstances not present here. See Finance Comm'n of Boston v. Commissioner of Revenue, 383 Mass. 63, 67-72 (1981); G.L. c. 62C, § 2I(a); Mass. G. Evid. § 519(a). Federal tax returns, in turn, are subject to a qualified privilege, and Plaintiff has not shown the requisite substantial need for such records. See Town Taxi, Inc. v. Police Comm'r of Boston, 377 Mass. 576, 586-88 (1979); Driscoll v. McCann, No. 19-CV-12302-ADB, 2020 WL 5983272, at *4 (D. Mass. Oct. 8, 2020); Love, 2007 WL 9799830, at* 1. Finally, a company's tax returns in any given year or even series of years is not probative evidence of its net worth.
            For the foregoing reasons, Plaintiffs discovery of the Defendant's financial information shall be limited to records reflecting GZA's present net worth, as detailed infra. Plaintiff is independently entitled to production of records in GZA's possession, custody or control evidencing the remuneration GZA expected, earned and/or received in connection with the Government Center Garage demolition, as such information is relevant to its scope of work on the project.
III. GZA's INSURANCE COVERAGE
            The remainder of Plaintiff's Notice of Deposition seeks documents and testimony regarding all insurance policies that may provide coverage to GZA for the claims asserted in this litigation, as well as all communications between GZA and its insurers, insurance agents, and/or insurance coverage counsel, and all reservations of rights or denials of coverage related to the incident at issue. Plaintiff is, by rule, entitled to discovery as to "the existence and contents of any insurance agreement" that "may be liable to satisfy part or all of a judgment" in this action. Mass. R. Civ. P. 26(b)(2). Here, however, GZA has already identified and produced (1) a general liability policy with Great Divide Insurance Company; (2) a design professionals' liability policy
 
                                                            -7-
 
with Endurance American Specialty Insurance Company; (3) an umbrella policy with Aspen Insurance; (4) an umbrella policy with Navigator's Specialty Insurance; (5) a letter from Berkely Environmental dated July 1, 2022, disclaiming coverage under the Great Divide policy;
(6) GZA's response to Berkley Environmental, dated January 15, 2024; (7) Berkley’s reply on behalf of Great Divide, dated April 4, 2024; and (8) Aspen Insurance's reservation of rights letter, dated July 15, 2022. GZA's insurance broker, Risk Strategies, LLC, also produced to Plaintiff various items of correspondence between GZA and its insurers / Berkley Environmental, including all insurance policies, reservation of rights letters, and disclaimers in Risk Strategies' control related to GZA and the incident at issue. (See GZA's Mot. at 11; GZA's Reply at 6.) In addition, Plaintiff deposed GZA's corporate designee, Bradford Roberts, on approximately one hundred topics and subtopics that included GZA's insurance policies. (See GZA's Mot., Ex. C.) Neither Mass. R. Civ. P. 26(b)(3) nor the broader rules of civil discovery entitle Plaintiff to anything more. Plaintiff's insistent requests for additional testimony represent nothing more than unwarranted diversions into discovery-on-discovery and impermissible demands that GZA render legal opinions as to the scope of their insurance coverage- opinions that have no binding force on the insurers, and are thus irrelevant and beyond the scope of permissible discovery.[5]
 
--------------------------------------------
 
[5] Plaintiff's quibbles with the sufficiency of Mr. Roberts• testimony are unpersuasive. Contrary to Plaintiff's claim, and the colloquial shorthand of many members of the bar, neither Massachusetts nor Federal Rule of Civil Procedure 30(b)(6) requires a corporation to designate the "person most knowledgeable" for every designated topic. See Neponset Landing Corp. v. Northwestern Mut. Life Ins. Co.• 279 F.R.D. 59, 61 (D. Mass. 2011). The time and expense of such a requirement would hardly promote the interests of justice, particularly where, as here, a party has designated scores of topics for deposition inquiry. Rather, all that was required of GZA was to produce "a knowledgeable witness and to take reasonable steps to educate that designee." Kirkwood-Boulter v. Coleman, No. 1584CV02372, 2018 WL 2306417, at "'4 (Mass. Super. Ct. Mar. 26, 2018) (Campo, J.), citing Foster-Miller, Inc. v. Babcock & Wilcox Canada, 210 F.3d 1, 17 (1st Cir. 2000). There is no indication that GZA engaged in any of the kind of obstructive tactics Rule 30(b)(6) seeks to prevent - viz., "bandying" opponents with organizational employees who "each disclaims knowledge of facts that are clearly known to ... the organization[,]" Kirkwood- Boulter. 2018 WL 2306417, at* I, quoting Committee's Note to Fed. R. Civ. P. 30(b)(6) (1970). Instead, the excerpted portions of Mr. Roberts' testimony simply (and accurately) reflect that GZA's insurers disputed the extent
 
                                                            -8-
 
CONCLUSION AND ORDER
            For the foregoing reasons, Defendant GZA GeoEnvironmental Inc.'s Motion for Protective Order shall be, and hereby is, ALLOWED IN PART and DENIED IN PART.
Within 30 days of issuance of this Order, GZA shall produce the following:
(I)        GZA's annual reports or equivalent records reflecting its net worth (viz., assets and liabilities) from January 1, 2023 to the present, including identifying the value of all capital holdings, real property, chattel, and equipment owned, any outstanding mortgages, loans and other debts owed, its capital outlays, and its fiscal year gross and net revenue with an itemized list of income and expenses.[6]
(2)       The most current statements for all bank and/or investment accounts held in its name, either jointly or individually.
(3)       Records evidencing payments or remuneration that GZA expected to receive and/or did receive in connection with the Government Center Garage demolition.
            Within 21 days of issuance of this Order, GZA may serve a motion for a proposed protective order, pursuant to Superior Court Rule 9A, limiting distribution of the within-ordered production to the parties to this matter, their counsel, and their witnesses and retained experts.[7] The service of a motion for protective order shall not toll the running of the 30-day period for production. Until the Court rules on such a proposed protective order or the 21-day period expires without GZA serving one, however, the parties shall maintain the confidentiality of all
 
--------------------------------------------
 
of coverage available for Plaintiff's claims. This dispute does not warrant or entitle Plaintiff to additional discovery against GZA as to such matters.
[6] To the extent GZA lacks annual reports or equivalent documents comprehensively reflecting the aforementioned information, it shall in lieu thereof provide a sworn statement regarding the same in the form of an answer to a Rule 33 interrogatory.
[7] GZA may not parry inquiries into its financial status merely because it is a private company that purportedly keeps such information confidential. Nonetheless, the Court recognizes GZA's legitimate interest in preventing the dissemination of its proprietary information beyond the parties to this matter. The protective order contemplated herein strikes a reasonable balance. At the same time, the fact that the Court has ordered GZA to produce certain financial records does not mean that such information will necessarily be admissible at trial. See Mass. R. Civ. P. 26(b)(l). See also Kemezy v. Peters. 79 F.3d 33, 36 (7th Cir. 1996) (Posner, C.J.) (warning that plaintiffs should not be encouraged to use claims of punitive damages as a Trojan horse, " to put before the jury evidence that the defendant has a deep pocket and therefore should be made to pay a large judgment regardless of any nice calculation of actual culpability").
 
                                                            -9-
 
records produced pursuant to this Order and shall not disseminate any such records beyond themselves, their counsel, and their witnesses/experts without first obtaining leave of this Court.
SO ORDERED.